# CHARLESTON.

TAYLOR *v.* BUFFALO COLLIERIES CO.

Submitted June 13, 1911.    Decided April 29, 1913.

1.  CONTRACT—*Intent—Meaning and Purport—Parties.*
    In construing the provisions of a contract in an effort to ascertain the true intent, meaning and purport thereof, courts will and must always examine the contract in its entirety, or such parts thereof as may disclose or tend to disclose the object and purpose sought to be attained by the parties thereto. (p. 355).

2.  SAME—*Intent Definitely Expressed.*
    Where a particular purpose is sought by a contract, and the language pertaining thereto is clear and certain, no general terms used therein will extend the meaning thereof beyond the intent and purpose so definitely expressed.   (p. 355).

3.  SAME—*Intent—Parties.*
    The court should regard the obvious intent and design of the parties, and the object to be attained by them, as well as the language of the instrument itself.   (p. 356).

Appeal from Circuit Court Mingo County.

Bill was dismissed on defendant's demurrer, and plaintiff appeals.

*Modified and Affirmed.*

*G. R. C. Wiles* and *Campbell, Brown & Davis,* for appellants.

*Stokes & Bronson,* for appellee.

LYNCH, JUDGE:

The bill in this cause was dismissed by the circuit court, upon defendant's demurrer thereto.    Plaintiff appeals.    His right to relief is based upon a contract between him and Leftwich (who is not a party and apparently not interested) and the Buffalo Collieries Company, dated August 3, 1903.    It is unnecessary to quote more than two clauses of the contract, the first and the thirteenth; because they sufficiently express the true intent, meaning and purpose thereof, so far as necessary to the proper determination of plaintiff's right to the relief sought.

"*First.*    That, in consideration of the terms, conditions and

stipulations hereinafter set out, to be kept and performed by the parties hereto respectively, the parties of the first part do hereby let and lease to the party of the second part with the consent of the Buffalo Land & Coal Company, which said consent is hereto attached, as part of this lease, the exclusive right and privilege of mining, shipping and selling all the coal on, under and from the premises hereinafter described (800 acres), together with the privilege of manufacturing coke and all other by-products of coal on and from said premises, for a term of fifty years or until all the merchantable coal on, in and under said land shall have been mined and removed therefrom."

"*Thirteenth.* It is further agreed, stipulated and understood by and between the parties hereto that the lessors, Everett Leftwich and R. N. Taylor, shall have and do hereby retain and reserve unto themselves, their heirs or assigns a one-tenth interest in and to all the rights, privileges and property interest in or pertaining to the property or lease herein demised, contracted and described, which interest shall be held in the nature, shape and condition of paid-up and non-assessable stock in the lessee's company, which stock shall be evidenced by certificate properly issued, executed and signed by the proper officers of said company, one-half of the said ten per cent of the stock of said company to be issued to each of the lessors above named or his personal and legal representatives separately and in such denomination as he may direct; but in case no such direction be given then the proper officers of said company shall issue to each of the lessors above named five per cent of each and every issue of stock which may now or hereafter be made, and evidence the same by one certificate for each lessor or his representatives as above, covering his said five per cent of said stock issued, whether preferred, common or otherwise, and whenever or under whatever circumstances said company, its successors or assigns may issue any stock. And whenever said company, its successors or assigns may issue any stock of whatever kind, or for whatever purpose, ten per cent of such stock shall be issued to said lessors as above described, and the said ten per cent shall be paid up and non-assessable stock, without cost to or charge upon the said lessors above named or their representatives; and the holders of the non-assessable stock herein provided for shall be entitled to their pro rata dividends as are other stockholders."

By its articles of incorporation and charter, defendant was authorized to issue, and subsequent to its organization did issue, one thousand shares of its capital stock of the par value of fifty dollars per share, and distributed the same to its stockholders in the proper proportions, including the plaintiff, to whom it issued five per cent thereof or fifty shares. Of this plaintiff does not complain. Sometime thereafter, he sold and assigned, in the usual manner, the certificate thereof so delivered to him.

The gravamen of the complaint alleged by the bill is that from time to time thereafter, and without plaintiff's knowledge until within a few months before the institution of the suit, defendant obtained from the state, by the regular method, authority to increase its capital stock to a maximum of three hundred thousand dollars, and that, pursuant thereto, it did increase the same from fifty thousand dollars to or near the authorized maximum limit, five per cent of which, though demanded by him, it has failed and refused to issue to him, which he claims under the provisions of the thirteenth clause of the contract. As incident to the rights thus asserted, plaintiff, by the bill, further complains of defendant's denial of the privileges legally due him as one of its stockholders. He admits that defendant has successfully conducted its corporate business, has acquired and is operating mining leases on lands other than those leased to it by himself and Leftwich, "and has lately acquired and is now the owner of large holdings of valuable real estate purchased from the profits made in its said business of mining and shipping coal * * *, and has made large dividends and profits," in which it refuses him any participation under the contract as he interprets it. The relief sought is a decree requiring defendant to issue to him five per cent in value of the shares issued by it in excess of the first issue of one thousand shares, and to accord to him all the rights and privileges of a stockholder therein, and for discovery and an accounting.

The provisions of clause thirteen are, it is true, comprehensive and explicit, and, on a cursory examination, seem to sustain plaintiff's claim to relief. But, when carefully examined, and tested by the canons of construction applicable alike to all contracts whatever their purpose or character, the proper conclusion accords with the rulings of the circuit court on the demurrer to the

bill.   As is said in *Natural Gas Co.* v. *Oil Co.*, 56 W. Va. 402:
"Where a contract is made for the accomplishment of one main
purpose, as is usually the case, it is necessarily the purpose of
both parties, the thing on which their minds met, and as to which
they are in perfect accord; and every provision of the contract
must be read in the light of such purpose.   In other words, the
whole instrument must be considered in seeking its true mean-
ing."   See also *Mining Co.* v. *Fuel Co.*, 69 W. Va. 47; *Lumber
Co.* v. *Wilson,* 69 W. Va. 598; *Johnson* v. *Welch,* 42 W. Va. 18;
*Hurst* v. *Hurst,* 7 W. Va. 289; *Oil Co.* v. *Knox,* 68 W. Va. 362,
365; *Coal Co.* v. *Coal Co.*, 67 W. Va. 503, 515.   "Where a par-
ticular purpose is to be accomplished, and the language which
expresses it is clear and certain, no general words used in the same
agreement shall extend the meaning of the parties."   *Bloss* v.
*Plymale,* 3 W. Va. 393; *Ice Co.* v. *Ice Co.*, 99 Va. 245; *Glenn*
v. *Building Co.*, 99 Va. 695; 9 Cyc 579, 584, 587.   Measured by
these principles, established by this Court and in accord with our
views, is plaintiff's interpretation of the contract under consid-
eration the proper interpretation thereof?   The answer to this
inquiry finally determines the issues between the parties to the
controversy.

Plaintiff's contention is that, by clause thirteen, he is entitled
to, and has the equitable right to compel defendant to issue to
him, a definite percentage of its capital stock whenever or for
whatever purpose or character issued, whether issued for opera-
tions on the premises leased by him and Leftwich or by others
with whom or in whose lands or the coal thereunder the plaintiff
has not and possibly may never have any interest or claim—a
right without limit in duration, except perhaps by the dissolution
or insolvency of the corporation.   Of course, courts can not, nor
do they attempt either to make contracts for parties competent
to transact business for themselves, or relieve them from self-im-
posed imprudent agreements, except where fraud is charged and
clearly established.   They seek only, by fixed and definite rules,
to ascertain and declare, not whether the terms of the contract are
prudent or imprudent, but what the actual terms of their agree-
ment are, and, when thus determined, to enforce them according
thereto.

With this purpose in view, it is, as heretofore stated, necessary
to construe clause thirteen in connection with the first clause;

because, thereby, the parties identify or provide means for identification of the property to which the agreement relates, and to which clause thirteen refers. The latter states with precision that "it is further agreed, stipulated and understood by and between the parties hereto that the lessors, Everett Leftwich and R. N. Taylor, shall have and do hereby retain and reserve unto themselves, their heirs and assigns a one-tenth interest in and to all the rights, privileges and property interest in or pertaining to the *property or lease herein demised, contracted and described*" —thus clearly limiting the application of the otherwise general and comprehensive subsequent provisions thereof to the particular property forming the subject matter of the entire contract. This limitation is further prescribed by the additional provision that the one-tenth "interest" in "the rights, privileges and property" therein "demised, contracted and described", "shall be held in the nature, shape and conditions of" paid-up and non-assessable shares in each and every issue of the capital stock of the company of whatever character, for whatever purpose, or whenever issued, pertaining, not generally to all the property thereafter acquired by it, but specifically to the property which the contract definitely describes, and to which its application is thereby confined. This is a reasonable construction thereof, and the one apparently first adopted by the plaintiff; because he delayed assertion of any claim to or share in the authorized increase, from February, 1907, the date when authorized, the certificate for which was promptly recorded in the proper office of Mingo county, until June, 1910. This delay he seeks to excuse by an indefinite statement that he "has lately discovered" the authority thus acquired by the defendant. As further evidence of an intent, sufficiently expressed in the lease, that the interest of the plaintiff should be limited to the demised premises, the contract provides, in addition to clause thirteen, for a rental of ten cents per ton and a minimum royalty of five thousand dollars annually. Any other construction or interpretation of these provisions is not only unreasonable, but in violation of the established rules therefor previously announced herein, as well as in conflict with the real purpose expressed in the agreement.

Not having asked and not granted leave to amend his bill before final decree, and asking it now, the decree of the circuit court is to that extent modified, and, as so modified, it is affirmed.

*Modified and Affirmed.*