AMICON ET AL. v. HOLTZ.

*Contracts—Sale of onions, in first class condition, graded and bagged—Evidence inadmissible to vary written provisions imposing duties upon seller—Word "house" misspelled "huose" regarded as clerical error, when—Facts and circumstances surrounding transaction admissible in construing written contract—Parol evidence admissible in construing doubtful word—Court, and not jury, to determine contract from writing itself—Refusal of special request to charge jury, error—Duty of seller to comply with contract provisions.*

1. Under written contract for sale of onions providing that they should be "loaded on board cars in first-class condition free from frost and all defects" and that they were "to be properly graded over 1¼″ screen, and placed in 100 lb. bags according to agreement," evidence *held* inadmissible to show oral agreement that buyer should place man at screen to accept onions as bagged.

2. In contract for sale of onions in seller's onion "huose," word "huose" *held* to mean "house," where correctly spelled in duplicate copy of contract, under rule that, where written contract is executed in duplicate, and word is misspelled and unintelligible in one copy, court will construe misspelling to be "clerical error," and give word ordinary meaning which it has as correctly spelled.

3. In construing contract for sale of all onions of seller in his onion house on farm, estimated at 7,000 bushels, all facts and circumstances surrounding transaction such as amount of onions owned by seller at time and part that were in onion house *held* admissible on construction of written contract.

4. Where true sense and meaning of word in contract is doubtful, parol evidence is admissible to aid in its construction.

5. Permitting jury to determine what contract for sale of onions in fact was, after admission of oral evidence as to nature of contract, *held* error; it being duty of court to construe contract from writing itself except for parol evidence received as to meaning of doubtful word.

6. In action on contract for sale of onions requiring that onions be "loaded on board cars in first-class condition free from frost and all defects" and that they should "be properly graded over 1¼″ screen and placed in 100 lb. bags," refusal of instructions that seller must comply with such provisions *held* error.

(Decided March 21, 1927.)

ERROR: Court of Appeals for Huron county.

*Mr. W. R. Pruner,* and *Mr. Fred C. Rector,* for plaintiffs in error.

*Messrs. Young & Young,* for defendant in error.

WILLIAMS, J. The parties to this action entered into a written contract for the sale of onions, which was in duplicate. The following is a copy of one of the duplicates:

"Plymouth, Ohio, Nov. 6, 1925.

"This is a contract between J. C. Holtz and John Amicon Bro. & Co., Columbus, Ohio, —— has sold his onions to —— at the following price: All house moore or lest on farm Estimated about 7,000 bushe bags at $2.00 per 100 lbs. Loaded on board cars in first class condition free from frost and all defects. These onions to be properly graded over 1¼″ screen, and placed in 100 lb. bags according to agreement. Asebet here. These onions are known as yellow globes. F. O. B. here. John Amicon furnishes the bags.

"Signed this 6th of Nov. 1925. $500.00 paid to seller as advance on contract.

"John Amicon Bros. & Co.,
"By Charles Amicon.
"J. C. Holtz."

The other duplicate was identical in form with

the exception that the word "house" was spelled "huose," and in place of the word "bushe" appears "bushel."

Under this contract J. C. Holtz, who is defendant in error here, and was defendant in the original action in the court of common pleas of this county, screened, bagged, and loaded on board cars at Willard, Ohio, four carloads of onions, beginning about November 25, 1925. Upon inspection of the cars of onions so loaded, made while the cars were standing upon the railroad tracks at Willard, Ohio, the onions were found to be 18 per cent. to 24 per cent. frosted onions. The plaintiffs in error, John Amicon Bros. & Co., thereupon rejected the onions and thereafter no more cars were loaded by the defendant in error. Under date of December 9, 1925, plaintiffs in error notified the defendant in error by letter, in substance, that they considered that the defendant in error had broken his contract and that the contract was canceled, and demanded the return of the $500 paid. Later letters written by the plaintiffs in error also demanded pay for the bags delivered to the defendant in error. In a letter dated January 8, 1926, the defendant in error informed the plaintiffs in error that he had sold two cars of onions, and that as soon as he could get settlement he would mail the check for 1,000 bags and the $500 paid on the contract. The defendant in error failed to send such check, and on January 27, 1926, plaintiffs in error began an action in the court of common pleas for damages for breach of the contract in failing to deliver the onions as therein provided for. The defendant below filed an answer which amounted, in substance, to a general denial, and by way of

cross-petition set out, in substance, that the plaintiffs agreed to purchase his onion crop, to immediately furnish bags for shipping the same, and to assist in the sort thereof, and averred a breach of the contract and prayed for damages. Breach of the contract was denied by plaintiffs. There was a verdict and judgment for the defendant.

Upon trial of the case below the claim was made by the defendant that the contract contained words whose meaning was not clear, that it showed upon its face that it was not complete in and of itself, and that therefore the defendant had a right to offer oral evidence of conversations that took place during the negotiations and prior to the signing of the contract, which amounted to an oral agreement to the effect that the plaintiffs were to have a man on the screen to accept the onions when they went into the bag. The trial court admitted such evidence. Contention also arose upon the trial as to the meaning of the word spelled "house" in one copy of the contract and "huose" in the other, and as to the meaning of the word "asebet." The plaintiffs claimed that the words "house" or "huose" meant "his," and the defendant contended that it meant "house." As to the word "asebet," the plaintiffs contended that it meant "received," and the defendant that it meant "accepted."

Oral evidence was not competent to show that there was an oral agreement that the plaintiffs should place a man on the screen to accept the onions as they were bagged. The written contract provides, among other things, that the onions should be "loaded on board cars in first-class condition free from frost and all defects," and that they were "to be properly graded over 1¼"

screen, and placed in 100 lb. bags according to agreement," the bags to be furnished by the plaintiffs, and to be "Asebet [accepted] here. * * * F. O. B. here." As we construe this contract the defendant sold his onions loaded on board cars, in first-class condition free from frost, and he was not only required to load them in that condition, but also to grade them and place them in bags. The contract, therefore, required the defendant to do everything required to be done to place them on board cars in the specified condition, even to the screening. For the trial court to permit the defendant to show an oral agreement, made during negotiations, and before execution of the written contract, which would relieve him in whole or in part from these duties imposed by the written contract, was to permit evidence to vary the terms of the written contract, and such evidence was incompetent and prejudicial.

As to the words "house" and "huose," we think it is apparent that the parties made a clerical error in spelling the word "house" in the one copy, and that the rule should be that, where a written contract is executed in duplicate, and in one copy a word is misspelled, and as misspelled is unintelligible, the court should construe the misspelling of such word to be a clerical error and give to the word the ordinary meaning which it has as correctly spelled.

As we interpret this written contract, the defendant sold and the plaintiffs bought all the onions of the defendant in his onion house on the farm, estimated at 7,000 bushels. All the facts and circumstances surrounding the transactions, such as

the amount of onions owned by the defendant at the time, and the part that were in the onion house, were admissible in evidence and proper to be considered on the construction of the written contract, and as the defendant owned about 11,000 or 12,000 bushels of onions, and had approximately 7,000 bushels in his onion house, we think the proper construction of the contract as to the number of onions sold is plain.

As to the meaning of the word "asebet," we think doubt arises. In such a case the rule is that the true sense and meaning of a word of doubtful import may be shown by parol evidence. The reason for such rule arises out of the necessity of the case, for otherwise it might not be possible to make plain the meaning of a doubtful word. In the instant case, however, as said, the plaintiffs claimed that the word meant "received," and the defendant, "accepted." Whichever of these two meanings is given the word, the fact remains to be considered that the defendant could not relieve himself from the obligation to deliver onions, f. o. b. cars, free from frost. We therefore do not believe that it could affect the rights of the parties whether the word meant "received" or "accepted." Although the onions were on defendant's farm near Willard, the contract is dated at Plymouth, Ohio, and provides that the onions shall be delivered "F. O. B. here." Such onions as the defendant delivered were delivered by him f. o. b. Willard, Ohio, which is about six miles distant from Plymouth. Plaintiffs made no objection to the fact that the onions were so delivered, and it is evident that by their own conduct they construed the con-

tract to mean that the onions were to be delivered f. o. b. cars Willard, Ohio. It may be said, however, as was suggested by counsel on the hearing, that if the defendant were required to deliver onions f. o. b. cars at Plymouth, Ohio, he failed to comply with the contract in this respect.

The trial court, having admitted oral evidence as to the nature of the contract, permitted the jury, under instruction of the court, to determine what the contract between the parties in fact was. In this respect the court erred to the prejudice of plaintiffs in error, as it was the duty of the court to construe the contract from the writing itself, with the exception that parol evidence could be received as to the meaning of the word "asebet."

At the conclusion of all the evidence, and before argument, the plaintiffs requested the court to charge the jury as follows:

"No. 1. It was the duty of the defendant, under the contract, to load the onions on cars in first-class condition, free from frost, and all defects. Delivery was to be made f. o. b. Willard.

"No. 2. When loaded on the cars, the onions were to be in first-class condition, free from frost and all defects, and properly graded over a 1¼-inch screen."

The court refused to give these requests and in accordance with the views hereinbefore expressed such refusal was prejudicial error. Request No. 1 recites that the delivery was to be made f. o. b. Willard, but such was proper, in view of the construction placed upon the contract by the parties themselves.

Except as indicated, we find no error in the record prejudicial to the plaintiffs in error.

For the reasons indicated, the judgment will be reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

RICHARDS and LLOYD, JJ., concur.