HENDERSON DEVELOPMENT COMPANY, *Inc., v.* UNITED FUEL GAS COMPANY

(No. 8892)

Submitted May 2, 1939. Decided May 23, 1939.

*Wilbert H. Norton, Connor Hall, T. Dale Wilson* and *Scott & Ducker,* for appellant.

*Harold A. Ritz, R. K. Talbott* and *B. J. Pettigrew,* for appellee.

RILEY, JUDGE:

Henderson Development Company, appellant, brought this suit in equity in the Circuit Court of Putnam County against the United Fuel Gas Company, appellee, for specific performance of a contract to lay a pipe line to plaintiff's gas well in Teays Valley District, Putnam County, West Virginia, and to require defendant to take and pay for the gas produced therefrom. The case was later transferred to the Circuit Court of Cabell County. From a decree, dismissing plaintiff's amended and supplemental bill of complaint, the appeal is prosecuted.

In 1918, plaintiff acquired eleven oil and gas leases in Curry District, Putnam County, and by July, 1919, had drilled three wells thereon which were producing gas in paying quantities. Thereafter, on July 22, 1919, it entered into a contract with the Charleston-Dunbar Natural Gas Company, which recites that the development company "has sold and does hereby sell unto" the gas company and agrees that the latter company may take all the natural gas which may be produced by the former on said

eleven leases, and "all other leases lying in Putnam and Lincoln Counties now owned by the Henderson Development Co. as well as from any other lands which may be acquired and operated by" the development company "for the purposes aforesaid, located in Putnam and Lincoln Counties, West Virginia, * * *."

This contract provides, among other things, that the gas company shall furnish the pipe, construct and put into operation a line of adequate and sufficient capacity, of not less than four inches in diameter, to receive and discharge the gas produced thereunder; that the said line, designated as the "extended line", shall run from the line or lines of the gas company to the C. M. Wheeler well located on the C. M. Wheeler lease, one of the original eleven leases, a distance of approximately three thousand feet, the Wheeler end of said line being designated as the "junction station"; that the gas company shall construct and maintain all necessary "gathering lines" and fittings of sufficient capacity to connect any producing gas wells "now drilled, or which may hereafter be drilled upon said lands, under the terms of this contract", to and into the "extended line", and that each gas producing well drilled on "said lands" shall be connected with the "extended line" at the "junction station."

It is important to note that the contract further provides that the development company is not to drill any well closer than two thousand feet to any other gas well, unless the same is required or made necessary by offset, or terms of leases, or for proper development of any tract developed thereunder, without first securing the gas company's consent; and that the development company agreed to develop the lands embraced in the leases operated under the contract "by drilling said wells radiating *successfully* [successively], as far as practical, from the said Gathering Station in a manner commonly known as 'Location by Location' unless other manner of drilling is required or made necessary under the provisions or term of said leases."

The contract was for five years from November 1, 1919,

and so much longer thereafter as gas is produced in paying and marketable quantities from the lands described therein, or which may be acquired thereunder, subject to the right of either party to terminate the contract whenever the development company is unable to furnish to the gas company as much as 100,000 feet of gas per day on an average during the twelve months of any year, and to declare any well non-productive should it fall below a daily capacity of 20,000 cubic feet.

On December 31, 1929, the gas company sold all of its property to the appellee, United Fuel Gas Company, which assumed all of the former's obligations. Five wells, in addition to the three original wells, were drilled by the development company on the eleven leases between 1919 and 1931. The development company having acquired a block of leases aggregating fifteen hundred acres in Teays Valley District, Putnam County, a distance of 7.9 miles to the north of the original development, completed a gas well on one of said leases. The development company requested the appellee to connect said well with the appellee's lines, which it refused to do, and this suit resulted.

A cardinal rule in the construction of a contract is that its main object, or the purpose which the parties sought to accomplish, is to be considered in ascertaining their intention, and particular parts of the contract must be so construed as to harmonize with such purpose, if possible. 1 Restatement, Contracts, p. 327, sec. 236 (b); *Carnegie Nat'l Gas Co.* v. *South Penn Oil Co.,* 56 W. Va. 402, 49 S. E. 548; *Charleston Lumber Co.* v. *Friedman,* 64 W. Va. 151, 154, 61 S. E. 815; *Taylor* v. *Buffalo Collieries Co.,* 72 W. Va. 353, 79 S. E. 27; *Wetterwald* v. *Woodall,* 83 W. Va. 647, 98 S. E. 890; *Towles & Co.* v. *County Court of Summers County,* 95 W. Va. 310, 121 S. E. 93; *Huntington Development & Gas Co.* v. *Topping,* 115 W. Va. 364, 176 S. E. 424; *Wilson* v. *Starbuck,* 116 W. Va. 554, 182 S. E. 539, 102 A. L. R. 485.

A cursory examination of the contract in the instant case indicates that a methodical development of the gas

properties is contemplated, and that, as so developed, the utility will make all necessary connections and take the gas produced thereby, in accordance with the terms of the contract.

In the first place, the expression "extended line" is in the singular and "gathering lines" in the plural, and the contract clearly indicates an intention to connect all "gathering lines" into the "extended line" at the "junction point". This being so, most pertinent becomes the clause providing that the distance between wells shall not be less than 2,000 feet and further providing that the properties shall be developed "by drilling said wells radiating *successfully*, as far as practical, from the said Gathering Station in a manner commonly known as 'Location by Location' * * * ." Of course, the word "successfully" does not make sense in the clause and clearly "successively" was the word intended, which should be substituted in the interest of justice. 12 Am. Jr. 775, note 7; 3 Williston, Contracts (Rev. Ed.), 1783; *Charleston Lumber Co.* v. *Friedman, supra; Amicon* v. *Holtz,* 26 Ohio App. 485, 160 N. E. 482; *Monmouth Park Assoc.* v. *Wallis Iron Works,* 55 N. J. L. 132, 26 Atl. 140, 19 L. R. A. 456, 39 Am. St. Rep. 626. What is meant by this clause of the contract appears from the testimony of the former secretary of the Charleston-Dunbar Company. He stated, in effect, that the contract contemplated the successive drilling of wells from the "extended line" in successive locations. His testimony, though illuminating, is not necessary to persuade us that the contract readily lends itself to this interpretation. No other interpretation, we suggest, is reasonable under the circumstances and the plain meaning of the words. Webster's New International Dictionary, Ed. 1930, contains the following supporting definitions: *"Extend:* To stretch or draw out; to cause to reach or continue as from point to point * * *." *"Gather:* To come together; to collect; to unite; * * *." So these definitions lend strength to our interpretation of the contract. In fact, it seems no other interpretation will suffice. The parties to a contract are presumed to have

used the words in the instrument in the sense in which they are generally understood. 12 Am. Jur. 758-759, notes 17, 18 and 19; 1 Restatement, Contracts, 319, sec. 235 (a); *Jennings* v. *First National Bank,* 116 W. Va. 409, 180 S. E. 772, 100 A. L. R. 494; *Minor* v. *Pursglove Coal Mining Co.,* 111 W. Va. 28, 161 S. E. 425; *Chafin* v. *Main Island Creek Coal Co.,* 85 W. Va. 459, 102 S. E. 291, 11 A. L. R. 657; *Carnegie Nat'l. Gas Co.* v. *South Penn Oil Co., supra.* It seems clear from the foregoing that the contracting parties never intended to include a well eight miles distant from, and without intervening development connecting it with, the original development.

The provision referring to any and all lands which may be thereafter acquired, wherever situate, in Putnam and Lincoln Counties, although occupying an earlier position in the contract, must be considered in the light of the plan of development contemplated by the contract, else a large portion of the contract must be unnecessarily ignored. Force and effect must be given to every word, phrase and clause employed, if possible. 12 Am. Jur. 774, 775, notes 18 and 19; 13 C. J. 535-6, sec. 497; 1 Restatement, Contracts, 319, sec. 235 (c); *Clayton* v. *Nicely,* 116 W. Va. 460, 182 S. E. 569; *Minor* v. *Pursglove Coal Mining Co., supra; McConaughey* v. *Holt, Spec. Com'r.,* 102 W. Va. 290, 135 S. E. 282; *South Penn Oil Co.* v. *Knox,* 68 W. Va. 362, 69 S. E. 1020, 1021. We therefore conclude that the chancellor did not err in dismissing plaintiff's suit.

In view of the foregoing construction, the applicability of the rule against perpetuities, the lack of mutuality of remedy, the non-existence of the Teays Valley District leases at the time of the contract, and the other questions raised by both appellant and appellee become moot and need no adjudication here.

The decree of the circuit court is affirmed for the foregoing reasons.

*Affirmed.*