COLUMBIA GAS TRANSMISSION CORPORATION

*v.*

E. I. DU PONT DE NEMOURS *and* COMPANY

(No. 13392)

Decided September 9, 1975;

Rehearing Denied October 24, 1975.

2

*Goodwin, Goodwin, Bryan & Lobert, C. E. Goodwin, H. L. Snyder* for appellant.

*Spilman, Thomas, Battle & Klostermeyer, Howard R. Klostermeyer, Edwin B. Connolly* for appellee.

HADEN, CHIEF JUSTICE:

This is an appeal by Columbia Gas Transmission Corporation from a final order of the Circuit Court of Kanawha County, West Virginia, denying Columbia's claim

against E. I. du Pont de Nemours and Company for an alleged breach of contract. Columbia claims DuPont failed to honor a tax adjustment clause in a contract between Columbia and DuPont involving the sale and delivery of natural gas from Columbia to DuPont. Du-Pont also cross-appeals against Columbia, complaining of the adverse judgment of the circuit court in its decision that the contract and Tax Adjustment Clause in question signified the parties' intention to apportion liability for Business & Occupation Taxes imposed on Columbia incident to the sale and delivery of natural gas to DuPont.

The principal issues before this Court are: (1) whether the contract in question and its Tax Adjustment Clause purported to cover the incidence and apportionment of liability of Business & Occupation Tax imposed upon Columbia due to its business activities of selling and delivering natural gas to DuPont; and if the first question is answered in the affirmative, (2) whether the Tax Adjustment Clause contemplated the apportionment of increased tax liability imposed upon Columbia by reason of an administrative assessment made by the State Tax Commissioner.

On the first issue, the circuit court ruled in Columbia's favor. It held that the Business & Occupation Tax was included in DuPont's promise to reimburse United Fuel Gas Company (Columbia's predecessor), and that it was a tax " 'in respect of,' the gas delivered by United Fuel to duPont." On the second issue, the circuit court ruled in DuPont's favor. It held: that the Tax Adjustment Clause of the sales agreement "contemplated only additional tax liability created by legislative action," as distinguished from administrative assessment by the tax commissioner or liabilities as fixed by the courts; that the additional Business & Occupation Taxes paid by Columbia's predecessor were not increased taxes "levied, assessed or fixed by ... the State of West Virginia;" and therefore, that these taxes were not subject to appor-

tionment under the Tax Adjustment Clause of the sales agreement between Columbia and DuPont.

From stipulated facts it appears that in 1953, the then Tax Commissioner, C. H. Koontz, subsequent to a tax audit of the business operations of United Fuel Gas, issued a written communication to United Fuel to the effect that no audit findings would be made against it, because United Fuel was reporting its several operations in the proper tax classifications under the Business & Occupation Tax.

In 1956, United Fuel and DuPont entered into the sales agreement which is the subject of this appeal. The sales agreement generally provided for the sale and delivery of natural gas from West Virginia and southwest sources by Columbia to DuPont for its manufacturing operations at its Belle, West Virginia plant at a stated consideration for thousands of cubic feet of gas (MCF) sold and delivered. This agreement contained an escalation clause entitled a "Tax Adjustment Clause" as follows:

> *"Tax Adjustment.* In addition to the purchased gas adjustment referred to above, Buyer shall reimburse Seller in an amount equal to the amount of any sales, transactions, occupation, service, production, severance, gathering, transmission, export or excise tax, assessment, fee or other exaction hereafter levied, assessed or fixed by the United States or the State of West Virginia or any other state or other governmental authority, and any tax, assessment, exaction, or fee of a similar nature or equivalent in effect (not including income, excess profits, capital stock, franchise or general property taxes), in addition to or greater than those being levied, assessed or fixed at the date of this agreement, if any, on, measured by, in respect of, or applicable to the natural gas to be delivered by Seller to Buyer under this agreement and which Seller may be liable for during any month of the term hereof, either directly or indirectly through any obligation to reimburse others and which has not been

included in determining the unit cost under the Purchased Gas Adjustment clause set forth in Section 2 hereof. Such reimbursement shall be included as a separate item or items in the bills to be rendered monthly by Seller to Buyer for gas sold under this agreement. In the event all or any part of such tax liability of Seller is not determined or is not reasonably determinable so as to be included in such monthly bills for gas, then the amount of such reimbursement required in respect of such tax liability not determined or reasonably determinable shall be set forth for all months in any calendar year in a statement to be rendered by Seller to Buyer by April 1 of the following year and Buyer shall pay the amount due pursuant to such statement on or before May 1 of such following year."

Beginning prior to 1953 and continuing at the time Columbia entered into the sales agreement with DuPont, Columbia reported for tax purposes the gross proceeds of its sales of gas to DuPont and similar users under *W. Va. Code* 1931, 11-13-2(c), as amended, known in Business & Occupation Tax parlance as "the wholesaling category." This tax rate is at the lower end of the scale in comparison to other rates levied by the Legislature in the Business & Occupation Tax. The rate in question in 1956 was 19-1/2¢ per hundred dollars of gross proceeds, or gross valuation of product in the wholesaling category. In 1959, the Legislature amended the rate applicable to the wholesaling category, Section 2(c), *supra*, by increasing it to 25¢ per hundred dollars of gross proceeds. Pursuant to this tax increase levied by the Legislature and in accordance with the Tax Adjustment Clause, Columbia billed DuPont to recover the tax increase imposed against its business operations. DuPont paid those billings without question.

The precipitating cause of this litigation was administrative action taken by State Tax Commissioner, G. Thomas Battle, in the year 1963. As a result of a complete field audit of United Fuel Gas' operations, Commis-

sioner Battle concluded that Columbia was improperly reporting its sales to DuPont under the wholesaling classification. Thereafter, he issued an assessment for taxes insufficiently returned based upon his conclusion that the gas sales to the industrial user, DuPont, should have been properly reported to the tax commissioner under Section 2(d), (*W. Va. Code*, 1931, 11-13-2(d), as amended) known in Business & Occupation Tax parlance as the "public utility-natural gas category." This tax rate was much greater than the 25¢ per hundred dollars rate previously reported by United Fuel in the wholesaling category. The rate in question for the public utility-natural gas category was $3.90 per hundred dollars of gross income. Thus, the tax commissioner, on December 10, 1963, assessed Columbia at the higher rate of $3.90 per hundred for a five-year audit period, resulting in a total assessment of taxes and penalties in excess of $1,000,000.

United Fuel objected to this assessment and petitioned the tax commissioner for a re-assessment, which was denied by the commissioner. United Fuel appealed the tax commissioner's action to the Circuit Court of Kanawha County which reversed the tax commissioner on the ground that the sales to DuPont were made in interstate commerce and were, therefore, exempt because of other language in Section 2(d) and because of the Commerce Clause of the United States Constitution. Thereafter, the tax commissioner appealed to this Court, which reversed the circuit court on the interstate commerce issue and affirmed the tax liability imposed by the tax commissioner, but agreed with the circuit court that penalties imposed by the commissioner were improper. *See, United Fuel Gas Co. v. Battle*, 153 W. Va. 222, 167 S.E.2d 890 (1969). United Fuel took a further appeal to the United States Supreme Court which was dismissed *sub nom* by that Court. *See, United Fuel Gas Co. v. Haden*, 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969).

Then, upon remand to the Circuit Court of Kanawha County, the final judgment in favor of the tax commis-

sioner was entered by that court on December 20, 1969 for the taxes due under Section 2(d) of the Business & Occupation Tax statute for the years 1957 through 1961. On the same day, United Fuel submitted amended returns, consistent with this Court's ruling, for the years 1962 through 1968. United Fuel paid additional taxes for the years 1957 through the month of August 1970, based upon the increased rate reportable under Section 2(d).

Throughout this long period of litigation with the tax commissioner and at three levels of the State and Federal court structure, United Fuel kept DuPont advised of the matters in litigation and the progress and outcome of the litigation.

After all litigation was concluded, and pursuant to its interpretation of the Tax Adjustment Clause of the sales agreement, United Fuel sought reimbursement from DuPont for the increased tax resulting from the tax commissioner's assessment in 1963. United Fuel claimed that DuPont owed it $2,177,432.18, the alleged amount of the increase that United Fuel had paid through the month of August 1970, the last month preceding the filing of the complaint in the civil action culminating in this appeal.

DuPont refused to pay the sum, objecting both before and during this litigation, that the Tax Adjustment Clause had application only to taxes increased by legislative action of the State of West Virginia, and that the clause, in any event, did not contemplate taxes incident to the imposition of the Business & Occupation Tax levied and imposed pursuant to *W. Va. Code*, 1931, 11-13-1, *et seq.*, as amended.

The problems before this Court concern construction of the terms contained in the contract and ascertainment of the intent of the parties in relation to the entire contract and of their specific intent in respect to the Tax Adjustment Clause. These same problems confronted the lower court and there, both parties to this appeal agreed to submit the case on stipulated facts and two agreed issues, which were stated as follows:

"(1) Under the Tax Adjustment Clause of the Sales Agreement, are the taxes alleged to be reimbursable and sought to be recovered in this action taxes 'on, measured by, in respect of, or applicable to the natural gas to be delivered by Seller to Buyer under this agreement'?

"(2) Under the Tax Adjustment Clause of the Sales Agreement, are the taxes alleged to be reimbursable and sought to be recovered in this action taxes 'levied, assessed or fixed by * * * the State of West Virginia * * * in addition to or greater than those being levied, assessed or fixed at the date of this agreement'?"

The threshold question is, of course, whether under the first issue the sales agreement and its tax adjustment clause covers Business & Occupation Tax liability. The trial court summarily disposed of this issue and held that the Tax Adjustment Clause's reference to "occupation" and "excise" taxes coupled with additional language covering tax increases "on, measured by, in respect of, or applicable to the natural gas to be delivered by Seller to Buyer . . . .", obviously meant that the parties contemplated the escalation clause to include increases in the Business & Occupation Tax liability.

On its cross-assignment of error in this appeal, DuPont contends that the tax imposed under Section 2(d) is a tax on rendering public utility services and not a tax "on, measured by, in respect of, or applicable to" the gas sold by the utility, *citing, Cole v. Pond Fork Oil & Gas Co.*, 127 W. Va. 762, 35 S.E.2d 25 (1945). The *Cole* case indicated that the Business & Occupation Tax is not a tax on the product produced (that case) or products sold (this case), but rather upon the business or the privilege the person is engaged in. Also in support of this proposition, DuPont relies upon the case of *Soto v. Hope Natural Gas Co.*, 142 W. Va. 373, 95 S.E.2d 769 (1956). In that case this Court held, as respects the production of natural gas and taxation under *W. Va. Code*, 1931, 11-13-2(a), as amended, that the tax incident occurs or attaches at

the point where production ceases rather than at the moment when the product is sold.

We believe that case to be inapposite to the present proposition because it was directed to the question of the relative valuation of the product at its point of completed production compared with the value at its point of sale. We agree with DuPont that the Business & Occupation Tax is a tax upon the privilege of conducting a business activity within the State of West Virginia. That, however, begs the question. The rate of tax must be applied to some quantum of measurement. In this contract and throughout the gas industry, the normal quantum of measurement in respect to sales to users is thousands of cubic feet (MCF) of natural gas sold and delivered. It seems patently obvious that the tax rate has to be applied to some gross proceed or some gross value which can be calculated only by determining what is sold, produced, manufactured, etc. in the proper classification. In the public utility-natural gas category, the essence of the activity taxed is the rendering of public utility services of a particular nature, that is, the sale and delivery of natural gas from the utility to the user and consumer. What is sold must be measured both from a business-relation standpoint and from a tax-incidence standpoint. The contract in question is both sufficiently broad and sufficiently precise to establish the price at which gas is to be sold and to impose a tax rate to the extent of the business activity conducted.

We agree with the Circuit Court of Kanawha County that there is no ambiguity, latent or patent, from the language of the contract on the question of whether it applies to or purports to cover Business & Occupation Tax liability. It clearly does. Under our reading of the contract, there is no need for this Court to construe its provisions, because they are plain and clear, and can be applied without resorting to rules of construction. *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962); *Davis v. Combined Ins. Co. of America*, 137 W. Va. 196, 70 S.E.2d 814 (1952); *White v.*

*Bailey*, 65 W. Va. 573, 64 S.E. 1019 (1909). *See generally*, 17 Am. Jur. 2d *Contracts* §241 (1964).

For this reason we do no more than note the practical construction or the contemporaneous construction placed upon the contract by the parties in respect to this question. As was held in the case of *Cotiga Development Co. v. United Fuel Gas Co.*, *supra*, where ambiguity arises, the practical and contemporaneous construction placed upon the contract terms by the parties is of some moment. Were this rule applicable to this question, we would point to the fact that in 1959, when the Business & Occupation Tax was increased by legislative enactment, the parties specifically recognized the tax increase to be a subject for adjustment in the Tax Adjustment Clause. As reflected by the facts, DuPont reimbursed United Fuel annually for more than a decade for the increased Business & Occupation Taxes paid under *W. Va. Code* 1931, 11-13-2(c), as amended. Further, the whole of the sales agreement and the Tax Adjustment Clause refer to the taxes, in effect when the agreement was entered into by the parties, as being "fixed," meaning those taxes reported and paid under Section 2(c) pursuant to the 1953 audit ruling of Tax Commissioner Koontz. This language demonstrates that the parties at the time of the making of the contract recognized that Business & Occupation Taxes were taxes to be adjusted by escalation under the Tax Adjustment Clause.

In any event, DuPont's interpretation that the Tax Adjustment Clause applied to taxes generally but not to the Business & Occupation Tax would appear to render the Tax Adjustment Clause without any practical meaning in this jurisdiction. Since its enactment in 1933, the Business & Occupation Tax has been, with very few exceptions and none applicable to this business activity, the principal, paramount and most significant tax on the conduct of business activity within the State of West Virginia. Both parties to this contract are substantial taxpayers in the State of West Virginia. The clear purpose of this or any tax adjustment clause is to protect

the seller's margin of profits against rising costs he cannot control. It is incomprehensible that they would have contracted to escalate taxes in an otherwise long-term, fixed-price contract for the sale and delivery of natural gas without contemplating the significance of the Business & Occupation Tax on business activity. The point is so obvious it needs no elaboration.

As to the resolution of the second issue, apparent ambiguity arises between the language employed in the contract and that used in the applicable tax law. Resolution of the contract interpretation problem must be had by resort to the tax statute. Consequently, this Court is called upon to construe the latent ambiguity which prevents agreement of the parties.

In construing an ambiguous contract, it is elementary that the intentions of the parties to the agreement must control the obligations thereunder. Further, it is a well-recognized principle that in searching for the intention of the parties, the court must examine the instrument in its entirety. *Taylor v. Buffalo Collieries Co.*, 72 W. Va. 353, 79 S.E. 27 (1913); 17A C.J.S. *Contracts* §297 (1963). It is also certain that words are to be considered in the context in which they are employed. 17A C.J.S. *Contracts* §297 (1963).

With respect to this issue, DuPont asserts that, if the tax escalation clause is operable as to increases in the Business & Occupation Tax, it is operable only when those increases are occasioned by legislative enactment or amendment. Consequently, DuPont contends that the taxes sought to be recovered from it in this action arising from underpayment of existing tax rates and from failure to report properly under law in existence in 1956, are not taxes "in addition to or greater than those being levied, assessed or fixed at the date of this agreement" of November 8, 1956. On the other hand, Columbia maintains that the words "levied," "assessed," or "fixed" have a common and accepted meaning in the tax laws of this State, and such meanings were known to the parties at the time they entered into the contract. Columbia

asserts that the common and accepted meaning of the word "levied" denotes legislative action in the imposition of a tax rate or in the valuation of property, the latter when being considered from an *ad valorem* tax standpoint. According to Columbia, the word "assessed," supported by numerous references in Chapter 11 of the West Virginia Code, refers to administrative action of the tax commissioner or his delegates in the application of a tax rate to a particular transaction or occurrence. *See, Sussex County v. Jarratt*, 129 Va. 672, 106 S.E. 384 (1921). The word "fixed" is a broader, more inclusive term contemplating a resolution of a tax liability by agreement of the parties, by court decree, or by other means of *ad hoc* administrative action. Thus, Columbia maintains that taken individually and collectively, the use of these terms in the Tax Adjustment Clause connotes the parties' intention to adjust increase tax liability whether imposed or *levied* by a legislative body, *assessed* by a taxing official, or *fixed* by agreement of the parties, by judgment of the court, or by other action resulting in finality of a disputed tax liability. Consequently, Columbia contends that the tax commissioner's formal assessment against United Fuel issued in 1963 pursuant to *W. Va. Code* 1931, 11-13-7, as amended, was an exercise of sovereign governmental power and was thus an act by the State of West Virginia within the meaning of the language used in the Tax Adjustment Clause. *Morgantown v. Ducker, et al.*, 153 W. Va. 121, 168 S.E.2d 298 (1969); *Hamill v. Koontz*, 134 W. Va. 439, 59 S.E.2d 879 (1950).

DuPont argues that the assessment by the tax commissioner was caused by United Fuel's failure to report properly its tax liability to the State of West Virginia. DuPont firmly contends that no sound business practice would justify a party to a contract promising to indemnify another party to the contract against liability for improper reporting of taxes by such other party, citing a general rule of construction, i.e. that a contract between businessmen should be construed in accordance with sound business practices. 17A C.J.S. *Contracts* §294

(1963). Columbia's thrust of the case, on the other hand, is that no such inferences can be drawn from this case which would indicate that Columbia is guilty of tax evasion. Rather, Columbia argues, as previously stated, that taxes are determined in a variety of ways, including assessments by taxing officials.

It appears that the basic premise in DuPont's argument is that taxes are imposed only by Acts of the Legislature. That is true, of course, in the enactment of tax legislation and in the imposition of rates. Taxes, however, are not, in respect to their collection and reporting, self-executing. Obviously, it takes far more than legislation to properly bring a tax to the treasury of a governmental unit. Consequently, the West Virginia Legislature and all other legislatures commit the execution and enforcement of tax laws to the executive department of government. Whether designated tax commissioner, commissioner of revenue, sheriff or collector, such offices are constituted to conduct the executive function of collecting and enforcing revenue laws. When such officials do not exceed the parameters drawn for them by legislative authority, they are free to assess and collect taxes. *See, Hamill v. Koontz, supra*, at 442, and particularly *W. Va. Code* 1931, 11-13-22, as amended. When a *bona fide* dispute arises as to the amount and extent of tax liability or to the manner of collecting tax liability, such disputes properly reach the courts. The function of courts in relation to taxes is not to levy or assess the taxes but to review legislation and executive-administrative action and to determine their correctness. *Virginia Electric & Power Co. v. Haden*, W. Va., 200 S.E.2d 848, 853 (1973).

We hold that language employed in the Tax Adjustment Clause—"levied, assessed or fixed"—demonstrates that the contracting parties contemplated adjustments of liability imposed by the State of West Virginia through legislative, executive and judicial action, or any of the preceding, rather than through legislative rate imposition alone. Each word in a contract is presumed to have a unique meaning. As stated in *Carnegie Natural*

*Gas Co. v. South Penn Oil Co.*, 56 W. Va. 402, 49 S.E. 548 (1904). "[n]o word or clause in a contract is to be treated as a redundancy, if any meaning reasonable and consistent with other parts can be given to it." *Id., Syllabus,* point 3. To the same effect is *Henderson Development Co. v. United Fuel Gas Co.*, 121 W. Va. 284, 3 S.E.2d 217 (1939), wherein the Court explained that in construing a contract, "[f]orce and effect must be given to every word, phrase and clause employed, if possible."

Thus, the court below erred in finding that by the Tax Adjustment Clause the parties contemplated only those tax increases occasioned by legislative enactment or amendment. The tax commissioner's formal assessment was an action by the "State of West Virginia" within the meaning in which those words are used in the Tax Adjustment Clause; consequently, DuPont did breach its contractual obligation to Columbia by not reimbursing Columbia for the increased assessment.

Although we affirm on the first issue, we reverse on this latter issue and remand the case for final disposition consistent with this opinion.

*Affirmed in part;*
*reversed in part; and*
*remanded with*
*directions.*