# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**May 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DEBRA K. ZUSPAN,**
**Respondent Below, Petitioner**

**vs.)  No. 22-ICA-155** (Fam. Ct. Mason Cnty. No. FC-26-2018-D-13)

**CHARLES H. ZUSPAN, JR.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Debra K. Zuspan appeals the order of the Family Court of Mason County, West Virginia entered on September 9, 2022. Respondent Charles H. Zuspan, Jr. filed a timely response.[1] Mrs. Zuspan did not file a reply. This appeal concerns the distribution of the net proceeds from the sale of the marital residence when the parties divorced. The issue presented for consideration is whether the family court judge erred in holding that Mr. Zuspan's share of the net proceeds from the sale of the marital residence ($25,684.71) was meant to be paid to Ms. Zuspan in partial satisfaction of, rather than in addition to, the equalization payment of $206,911.50 required by the final divorce order.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.[2]

After twenty-six years of marriage, the parties separated on December 30, 2017, and were later divorced by order entered on February 26, 2019. At the final hearing, the parties informed the Court that they had reached a settlement agreement regarding the equitable distribution of their marital assets. This property settlement agreement was not reduced to writing and signed by the parties, but was placed on the record in open court and thereafter incorporated into the final order prepared by Mrs. Zuspan's prior counsel below.

---

[1] Mrs. Zuspan is represented by Leah R. Chappell, Esq. Mr. Zuspan is represented by Jennifer D. Ransbottom, Esq.

[2] The Court acknowledges that this matter was presented for oral argument on March 22, 2023, pursuant to Rule 19 of the Rules of Appellate Procedure.

1

The issue on appeal concerns the family court's interpretation of its Final Divorce Order entered on February 26, 2019, dissolving the Zuspans' marriage. This order set forth the parties' settlement agreement on all financial matters, including equitable distribution. The relevant paragraphs of the Final Divorce Order are as follows:

14. That the proceeds from the sale of the home shall be divided equally. However, [Mr. Zuspan's] share of the proceeds from the sale of the home shall be given to [Mrs. Zuspan] as part of the equitable distribution[.]

36. That [Mrs. Zuspan] is awarded $206,911.50 to be paid to her by [Mr. Zuspan] for her share of equitable distribution to equalize the parties['] assets and debts[.]

37. That upon the sale of the marital home, [Mr. Zuspan] shall pay [Ms. Zuspan] his one-half of the net proceeds from the sale. [Mr. Zuspan] then has (90) ninety days following the sale of the marital home, to obtain a loan to pay [Mrs. Zuspan] the remaining equitable distribution balance to total, $206,911.50, unless he is able to pay her sooner[.]

39. That the $206,911.50 does not include proceeds from the sale of the marital home, jewelry, farm equipment or any other items the parties may sell remaining in the marital home[.]

The home was sold on January 3, 2020, and the total net proceeds from the sale were $51,369.42. This amount was divided equally between the parties, with each receiving $25,684.71. At the time of the sale, Mr. Zuspan did not pay his share of the net proceeds to Mrs. Zuspan as required by Paragraph 14 of the Final Divorce Order, a failure for which he was subsequently held in contempt. Mr. Zuspan paid $206,911.50, the full amount of the equalization payment, to Mrs. Zuspan on November 19, 2020.

On June 30, 2022, Mrs. Zuspan filed her Petition for Contempt and Enforcement.[3] In her petition, Mrs. Zuspan asked the family court to compel Mr. Zuspan to pay her his one-half share of the net proceeds from the sale of the marital home ($25,484.71). In support, she argued that the language of the parties' settlement agreement as memorialized in the final divorce order awarded her those monies in addition to the $206,9111.50 referenced in Paragraph 36.

---

[3] Mrs. Zuspan subsequently filed her First Amended Petition for Contempt and Enforcement on July 1, 2022. However, according to the family court's order of September 9, 2022, the sole purpose of the amended petition was to correct the case number referenced in her original petition.

The family court heard argument on Mrs. Zuspan's petition for contempt and other matters on August 10, 2022, and on September 9, 2022, entered a 21-page order disposing of all issues. As to the narrow issue presented on appeal, the family court interpreted the parties' settlement agreement embodied in the divorce order based on general principles of contract law and concluded as follows in Paragraph 49 of its order:

> Upon reviewing the Final Divorce Order and all pertinent provisions relating to the sale proceeds and equitable distribution payment, the Court finds and concludes that the total equitable distribution payment owed from [Mr. Zuspan] to [Mrs. Zuspan] is $206,911.50[,] plus 5% interest from the date of entry of the Final Divorce Order, being February 26, 2019. The Final Divorce Order does not award to [Mrs. Zuspan] all of the net proceeds from the sale of the marital home as is clearly set forth in Paragraph 14 of said Order. If the Court were to accept [Mrs. Zuspan]'s argument, then there would have been no need for the Order to state that the sale proceeds were to be divided "equally" and the Order would have stated that "all" proceeds shall be paid to [Mrs. Zuspan].

Mrs. Zuspan appeals from this order which declined to award her an additional $25,684.71, a sum representing Mr. Zuspan's share of the proceeds from the sale of the marital residence, plus interest.

In reviewing final orders by family courts, the general rule is that "we review findings of fact by a family court judge under the clearly erroneous standard, and the application of law to facts under an abuse of discretion standard. We review questions of law *de novo.*" Syl. Pt. 1, *May v. May*, 214 W. Va. 394, 589 S.E. 2d 536 (2003); *accord Amanda C. v. Christopher P.*, No. 22-ICA-2, ___W. Va. ___, ____, ___S.E. 2d ___, ___, 2022 WL 17098574, at * 3 (Ct. App. Nov. 18, 2022). In the present case, we must apply these general standards of review in reviewing the lower court's interpretation of its own divorce order incorporating a settlement agreement reached by the parties, which raises the issue of whether any deference should be given to the lower court judge's interpretation of her own order.

In Syllabus Point 6 of *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell,* 228 W. Va. 252, 719 S.E. 2d 722 (2011), the court held that the interpretation of a court order is a question of law reviewable *de novo*.[4] Unlike the present matter, however, *Bedell* involved

---

[4] *Bedell* is the seminal case on this issue, but the same standard of review was stated in *Witteried v. City Council of Charles Town*, No. 22-0105, 2023 WL 2385190, at *4 (W. Va. March 7, 2023)(memorandum decision); *Mitchell v. Mitchell*, No. 17-0556, 2018 WL 4909884, at *3 (W. Va. Oct. 10, 2018) (memorandum decision) and *Certegy Check Serv., Inc. v. Fuller*, 241 W. Va. 701, 705, 828 S.E. 2d 89, 93 (2019). Like *Bedell*, *Certegy Check* did not involve a lower court's interpretation of an order; the *Certegy* court merely remanded the case for better findings of fact and conclusions of law. The memorandum

a writ of prohibition rather than an appeal and the Court was not asked to review a lower court's interpretation of its own order.[5] We note, however, that other courts have accorded some degree of deference to a lower court's interpretation of its own order because it was in the best position to say what was intended. *See, e.g.*, *Liberte Capital Grp. LLC v. Capwill*, 99 F. App'x 627, 633 (6th Cir. 2004)(although the standard of review is *de novo*, such review should be "undertaken with a good deal of deference to the [lower] court's interpretation of its own orders."); *Stansell v. Lopez*, 40 F. 4th 1308, 1311 (11th Cir. 2022)( a lower "court's interpretation of its own [prior]order is properly accorded deference on appeal when [that] interpretation is reasonable")(internal quotation marks omitted); *DirecTV, Inc. v. LETO*, 467 F. 3d 842, 845 (3rd Cir. 2006)(a lower court's interpretation of its own order is normally given "particular deference" unless "the plain language of the order is completely contrary to the Court's interpretation")(footnote omitted)(internal quotation marks omitted); *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997)(holding that a bankruptcy court's interpretation of its own order was entitled to "customary appellate deference" because it was "in the best position to interpret its own orders.")(internal quotation marks omitted).[6]

---

decisions in *Wittereid* and *Mitchell* did involve reviews of a lower court order interpreting a prior order, but did not discuss whether the lower court judge was interpreting an order that he or she had written, rather than another judge. Given these decisions, it is unclear how our high court would rule if squarely presented with the issue of whether any deference should be given to a lower court's interpretation of an order written by the same lower court judge.

[5] In fact, one of the parties in *Bedell* faulted State Farm "for not seeking clarification of the term 'medical information' from the circuit court." 228 W. Va. at 266, 719 S.E. 2d at 736. Nonetheless, the *Bedell* court did advise consideration of the lower court's intent, saying that when an order was ambiguous, "the appellate court must ascertain the intent of the lower court in entering the order. … Such intent is ascertained by reference to the record in the lower court's proceedings, … and **through the judge's prior statements regarding the order's effect**." *Id.* at 266, 719 S.E. 2d at 737 (emphasis added) (citations omitted)(internal quotation marks omitted).

[6] When asked during oral argument what deference, if any, should be given to the family court's interpretation of its own order, Mrs. Zuspan's counsel replied that the family court's interpretation, as an application of law to fact, should be reviewed for abuse of discretion, which is a more deferential standard than *de novo* review. Some courts expressly apply an abuse of discretion standard when reviewing a lower court's interpretation of its own orders. *See, e.g., Alley v. U.S. Dep't of Health & Hum. Servs.,* 590 F.3d 1195, 1202 (11th Cir. 2009); *In re Chicago, Rock Island and Pacific R.R. Co.*, 865 F.2d 807, 810-11 (7th Cir. 1988); *Roe v. Commonwealth,* 628 S.E. 2d 526, 528 (Va. 2006).

We also note that courts have differed on whether any deference should be given when a lower court interprets language agreed to by the parties and which is merely incorporated in the court's order, rather than language drafted by the court itself. *Compare Gates v. Gomez*, 60 F. 3d 525, 530 (9th Cir. 1995)(lower court's interpretation of consent decree was reviewed *de novo* but deference was given to its "interpretation based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal.")(internal quotation marks omitted) *with In re Blackwood Assocs., L.P.,* 153 F. 3d 61, 66 (2d Cir. 1998) (no special deference was due bankruptcy court's interpretation of a stipulation by parties because it did not draft it; it merely approved the stipulation). In the present case, although recognizing the issue, we need not decide whether we should accord any deference to the family court's interpretation of its own order, because our decision would be the same whether we did or not. With these standards of review in mind, we turn to the merits of this case.

The parties disagree as to whether we should treat the settlement agreement reached by the parties as a contract or as part of an order, but the same rules of interpretation apply in either case. In determining the effect of the settlement agreement incorporated in the family court's divorce order, we apply the rules generally applicable to the interpretation of written documents, whether they be contracts, orders, or other instruments. *See* Syl. Pt. 6, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 719 S.E. 2d 722 (2011)("When interpreting a court's order, we apply the same rules of construction as we use to construe other written instruments."); *Mitchell v. Mitchell*, No. 17-0056, 2018 WL 4909884, at *3 (W. Va. Oct. 10, 2018)(memorandum decision)(quoting *Bedell*); *Jesse v. Aycoth*, 202 W. Va. 215, 503 S.E. 2d 528 (1998) (per curiam)(applying rules of contract interpretation and holding that lower court properly considered parole evidence after it determined that the language of a settlement agreement incorporated into its divorce decree was ambiguous).

"A contract must be considered as a whole, effect being given, if possible, to all parts of the instrument." Syl. Pt. 2, A*ntero Res. Corp. v. Directional One Servs. Inc. USA*., 246 W. Va. 301, 873 S.E. 2d 832 (2022)(*quoting* Syl., *Clayton v. Nicely*, 116 W. Va. 460, 182 S. E. 569 (1935)). Furthermore, whenever reasonably possible, a writing should be interpreted so as to avoid inconsistencies among its provisions. 17A Am. Jur. 2d *Contracts* §374, Westlaw (database updated February 2023); 17A C.J.S. *Contracts* §429, Westlaw (database updated April 2023). As the *Antero* court stated in the third syllabus point of its opinion:

> "The primary consideration in the construction of a contract is the intention of the parties. This intention must be gathered from an examination of the whole instrument, which should be so construed, if possible, as to give meaning to every word, phrase and clause and also render all its provisions consistent

and harmonious." Syllabus, *Henderson Dev. Co. v. United Fuel*, 121 W.Va. 284, 3 S.E.2d 217 (1939).

The same rules apply when interpreting the order of a lower court. *See State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 267, 719 S.E. 2d 722, 737 (2011)("[W]e give force and effect to every word, if possible, in order to give the decree a consistent, effective, and reasonable meaning in its entirety.")(internal quotation marks omitted)(*quoting In Re Marriage of Brown,* 776 N.W. 2d 644, 650 (Iowa 2009)).

Applying these rules for interpreting written instruments, we conclude that Mr. Zuspan's share of the net proceeds from the sale of the marital residence was meant to be part of, rather than in addition to, the equalization payment of $206,911.50. As we discuss below, this is the only reasonable interpretation of the settlement agreement embodied in the family court's divorce order which allows us to give effect to all provisions of the agreement while avoiding any inconsistences among them.

Paragraph 14 of the divorce order provides that the proceeds from the sale of the marital residence shall be divided equally, but that Mr. Zuspan's share shall be given to Mr. Zuspan "as part of the equitable distribution." Nowhere does the order incorporating the parties' property settlement agreement say that Mrs. Zuspan will receive her husband's share of the net proceeds from the sale of the marital residence **in addition to** the equitable distribution payment.

Paragraph 36 of the order states that Mr. Zuspan will pay Mrs. Zuspan $206,911.50 as her share of the equitable distribution to equalize the parties' assets and debts. As the family court observed, if the intent of the parties had been to give her all of the proceeds from the sale of the marital residence, in addition to an equalization payment of $206,911.50, it would have been unnecessary to state in Paragraph 14 that the proceeds would be equally divided, but that Mr. Zuspan's share would be paid to Mrs. Zuspan as part of the equitable distribution. Paragraph 14 could simply have said that all of the proceeds would be paid to Mrs. Zuspan. Alternatively, the order could simply have awarded the house to her. Furthermore, Paragraph 36 does not state that Mr. Zuspan will be required to pay Mrs. Zuspan his share of the house proceeds in addition to $206,911.50 in order to equalize assets and debts.

Paragraph 37 of the order provides that Mr. Zuspan will pay Mrs. Zuspan his share of the proceeds when the house is sold, and that he will then have 90 days to obtain a loan in order to pay her "the remaining equitable distribution balance to total, $206,911.50, unless he is able to pay her sooner[.]" We read this language as saying that the house proceeds are clearly meant to be part of Mrs. Zuspan's share of the equitable distribution, and that there will be a remaining balance to pay after she receives those proceeds. The amount of that balance could not be determined until the house is sold, but it must be enough, when added to Mrs. Zuspan's share of the proceeds from the house sale, to equal

6

$206, 911.50. Among other things, Paragraph 37 sets out two sources of funding (proceeds from the sale of the marital residence and a loan) for the $206,911.50 that Mr. Zuspan is required to pay Mrs. Zuspan in order to equalize assets and debts.

Mrs. Zuspan attempts to rely on Paragraph 39, which states in part that "[t]he $206,911.50 does not include proceeds from the sale of the marital home…" Taken by itself, this language might be read in such a way as to create an apparent conflict with other paragraphs in the divorce order, but this is not the only language in Paragraph 39. This paragraph, in its entirety, states that "the $206,911.50 does not include proceeds from the sale of the marital home, jewelry, farm equipment or any other items the parties may sell remaining in the marital home[.]" Thus, there are four categories of things which will, or may be, sold, where the proceeds are not to be included in the equitable distribution payment of $206,911.50: "proceeds from the sale of the marital home," "jewelry," "farm equipment," and "any other items the parties may sell remaining in the marital home." In each case, there is a paragraph of the order saying that the proceeds of the sale of such property shall be equally divided between the parties. It appears that Paragraph 39 was included to ensure that Mrs. Zuspan's equal share of the proceeds from such sales would not reduce her equalization payment of $206,911.50.

Finally, we note that Mrs. Zuspan has not been entirely consistent in her treatment of the net proceeds from the house sale and the equalization payment of $206,911.50. On appeal, she argues that she is not only entitled to $206,911.50, plus Mr. Zuspan's share of the net proceeds from the sale of the marital residence, but also to 5% interest on the proceeds from the sale of the house. Her claim for 5% interest is apparently based on Paragraph 38[7] of the order which states that "a (5%) five percent interest shall accrue on any outstanding balance of the $206,911.50 upon the entry of this Order [.]" If Mr. Zuspan's share of the house proceeds were not part of the equalization payment of $206,911.50, it would not be subject to the 5% interest levied on any remaining balance of the $206,911.50 equalization payment.

For the foregoing reasons, we conclude that Mr. Zuspan was not required to pay Mrs. Zuspan $25,684.71 in addition to the $206, 911.50 already paid, and affirm the order entered by the Family Court of Mason County, West Virginia on September 9, 2022, holding that Mr. Zuspan was not in contempt on this issue.

---

[7] In the conclusion section of her brief, Mrs. Zuspan states that Mr. Zuspan should be required to pay her $25,684.71 (his half share of the net proceeds from sale of the marital residence), plus **"the 5% annual interest required in the Final Divorce Order** on said unpaid monies." (emphasis added). If Mr. Zuspan's share of the net proceeds from the sale of the marital residence was meant to be in addition to the equalization payment, it might be subject to statutory interest, but not to the interest specified in the divorce order for any remaining balance on the equalization payment.

Affirmed.

**ISSUED:** May 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen