DRUML COMPANY, INC., PLAINTIFF and Respondent, v. CAPITOL MACHINERY SALES & SERVICE COMPANY, Defendant and Appellant: E & C COMPANY, Intervening Defendant and Appellant.*

*November 2—November 30, 1965.*

* Motion for rehearing denied, with costs, on February 1, 1966.

For the appellants there was a brief by *Glassner, Clancy & Glassner* of Milwaukee, and oral argument by *Lawrence Clancy*.

For the respondent there was a brief by *George E. Frederick*, attorney, and *William P. McGovern* of counsel, both of Milwaukee, and oral argument by *Mr. McGovern*.

HALLOWS, J. The main issue is whether the trial court's finding that the screed was sold as a part of Lot 351 is contrary to the great weight and clear preponderance of the evidence. If the finding is not so contrary, this court will not upset it on appeal. *Kirchen v. Gottschalk* (1965), 26 Wis. (2d) 123, 131 N. W. (2d) 885; *Estate of Rich* (1965), 26 Wis. (2d) 86, 131 N. W. (2d) 909; *Estate of Starer* (1963), 20 Wis. (2d) 268, 121 N. W. (2d) 872. Applying the great-weight-and-clear-preponderance test, we stated in *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701, on page 255:

"Considering the evidence as a whole requires the evidence on each side to be weighed and probabilities arrayed against probabilities at least sufficiently to determine whether those on the appellant's side so manifestly outweigh those supporting the finding as to meet the great weight and clear preponderance necessary to disapprove the finding complained of. There may be credible evidence to sustain the court's finding and which, if a jury verdict were involved, would end the inquiry on the appeal, but which in view of the whole evidence will not reasonably support the finding."

Sales of personal property at auction prior to July 1, 1965, were regulated by sec. 121.21, Stats. (Uniform

Sales Act), and by the promulgated terms and conditions of the auction. *Keske v. Boeder* (1919), 168 Wis. 369, 170 N. W. 247; *Clarke v. Maisch* (1920), 171 Wis. 225, 177 N. W. 11.

The defendants contend that according to the terms of the sale the screed was a part of Lot 354 and could not be sold as part of Lot 351. Neither lot listed in the pamphlet refers to a screed, but it is argued that the finisher had a center screed attached but no front screed while Lot 354 (the finishing spreader) did not have any screed attached to it and that the screed in question was the same color as the spreader, being a darker shade of orange than the finisher. Prior to the auction the screed was used interchangeably with the spreader and the finisher. There is some testimony the tag on the screed had Lot 351 on it but the chalk mark on the screed was #354. There is testimony by Mr. Druml and the auctioneer that when Lot 351 was being auctioned Mr. Druml asked the auctioneer whether the screed was part of the lot, thereupon the auctioneer asked Mr. Schwerm the president of Capitol Machinery Sales & Service Company and was told the screed was part of Lot 351. This testimony is disputed by witnesses for the defendants. The trial court believed the testimony offered by the plaintiff and the defendants attack the auctioneer's credibility on the ground he might be liable for the screed to the plaintiff.

It is also claimed the plaintiff could not have purchased the screed at the auction because some two days thereafter upon discovering the screed had been removed from the auction site Mr. Druml phoned Schwerm and offered to buy the screed for some $200. During the conversation Schwerm claimed the screed went with Lot 354 purchased by Payne & Dolan for $300 and stated E & C Company had purchased it that morning for $1,004.25. Schwerm offered to sell the screed for $1,000 to Druml, which offer was refused. The $200 offer

was explained by Mr. Druml on the theory the plaintiff had immediate use for the finisher with two screeds and it was worth that much to him to resolve any difficulty with Schwerm.

Whether or not the screed originally belonged to Lot 354, the auctioneer under the terms of the sale had a right to vary the lot and put the screed into Lot 351. Considering all the evidence and recognizing the trial court's function to determine which witnesses to believe since their testimony is not inherently incredible, we do not believe the trial court's finding that the screed was sold as a part of Lot 351 is against the great weight and clear preponderance of the evidence.

It is contended the plaintiff cannot now make a claim for the screed because the doctrine of *caveat emptor* applies and further the plaintiff by taking possession of Lot 351 without the screed and surrendering the release has foreclosed itself from claiming ownership. At the time Lot 351 was struck down by the auctioneer to the plaintiff its representative was given what is designated a receipt which acknowledged the purchase of Lot 351 for $900 and described the property as "Lot 351, Finisher." This receipt contained in substance paragraph 12 of the conditions of sale to the effect there were no guarantees or warranties of any kind as to the condition or quantity regardless of catalog description and that the property was purchased "as is" and "where is." The buyer further agreed that "any pilferage, theft, damages or loss whatsoever to the property is now my responsibility."

We do not believe the doctrine of *caveat emptor* or the language of the release or the disclaimer in paragraph 12 of the conditions of the sale to the effect that "No claims for deficiencies, shortages or otherwise will be considered by the seller after the goods have been delivered" has any application to the instant facts. The maxim has application to the quality and condition of

the property and negates any warranty, but even under the doctrine a purchaser is entitled to receive what he buys. 77 C. J. S., Sales, p. 1160, sec. 315. No claim is made here concerning the quality or condition of the finisher or of the screed. The plaintiff's complaint is merely that the screed after legal delivery to him as part of Lot 351 was taken off the auction site by the defendants in violation of its rights as owner.

Likewise, this is not a claim barred by the conditions of the sale. No claim is made for a deficiency after the goods have been delivered from the seller's possession. Lot 351 including the screed was considered delivered under the terms and conditions of the auction at the time the receipt was given to the plaintiff by the auctioneer and signed by the plaintiff. The deficiency did not exist at that time but was created by the taking of the screed after the acceptance of the release, which provided that from that time the risk of loss through pilferage was the risk of the buyer. On that theory the plaintiff properly brought the replevin action against the defendants who took the screed.

It is argued the plaintiff accepted Lot 351 without the screed by removing the finisher from the auction site without the screed and giving up the release. On the Monday following the auction the plaintiff went to the auction site to remove its purchases. It had made purchases other than Lot 351. At that time the screed was lying on the ground near the finisher as it was at the time of the auction. Later in that day, unknown to the plaintiff, the defendant Capitol Machinery Sales & Service Company removed the screed when it removed Lot 354. When the plaintiff discovered the screed had been taken and upon being told Capitol had removed it, Druml phoned Schwerm who claimed the screed was a part of Lot 354 and not Lot 351. Under these conditions the removal of the finisher without the missing screed cannot be held to foreclose the plaintiff from continuing

to assert the screed was a part of Lot 351 which it purchased.

*By the Court.*—Judgment affirmed.

WILKIE, J., dissents.