NOVAK, Appellant, v. TOWN OF AGENDA, Respondent.

*No. 115. Argued October 28, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 38.)

For the appellant there was a brief and oral argument by *Arthur DeBardeleben* of Park Falls.

For the respondent there was a brief by *Wartman & Wartman* of Ashland, and oral argument by *David G. Wartman.*

BEILFUSS, J. The issue is whether the trial court's findings are against the great weight and clear preponderance of the evidence.

Before discussing the facts we would like to set forth the statutes upon which this condemnation action is based and the general rules of appellate review of trial court findings.

The statutes are:

"32.10 **Condemnation proceedings instituted by property owner.** Whenever any property has been occupied by a body possessing the power of condemnation but where such body has not exercised said power, the owner, if he desires to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. Such petition shall describe the land, state the board, commission or corporation against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the board, commission or corporation against which the proceedings are instituted. A copy of said petition shall be served upon the board, commission or corporation which has occupied petitioner's land, or interest in land. The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the board, commission or corporation as defendant. The court shall thereupon make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions contained in this chapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied."

"88.87 **Road grades not to obstruct natural drainage, landowners not to obstruct highway drainage; remedies.** (1) It is recognized that the construction of highways and railroad grades must inevitably result in some interruption of and changes in the pre-existing natural flow

of surface waters and that changes in the direction or volume of flow of surface waters are frequently caused by the erection of buildings, dikes and other facilities on privately owned lands adjacent to highways and railroad grades. The legislature finds that it is necessary to control and regulate the construction and drainage of all highways and railroad grades so as to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters due to a highway or railroad grade construction and to impose correlative duties upon owners and users of land for the purpose of protecting highways and railroad grades from flooding or water damage.

"(2) (a) Whenever any county, town, city, village, railroad company or the state highway commission has heretofore constructed and now maintains or hereafter constructs and maintains any highway or railroad grade in or across any marsh, lowland, natural depression, natural watercourse, natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands. All such highways and railroad grades shall be constructed with adequate ditches, culverts, and other facilities as may be feasible, consonant with sound engineering practices, to the end of maintaining as far as practicable the original flow lines of drainage. . . ."

The applicable rules of appellate review are as follows: In *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212, we stated:

"Since the trial court tried the case without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence and it is not necessary the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient that there is evidence to support a contrary finding. To command a reversal, such evidence although sufficient to support a verdict must constitute the great weight and the clear preponderance of the evidence. *Druml Co. v.*

*Capitol Machinery Sales & Service Co.* (1965), 29 Wis. (2d) 95, 138 N. W. (2d) 144; *Columbia Stamping & Mfg. Co. v. Reich* (1965), 28 Wis. (2d) 297, 137 N. W. (2d) 45; *Estate of Perssion* (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465; *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701.

"Consequently, on this appeal we must look at the evidence on each side and weigh it and evaluate the probabilities to determine whether the findings made are against the great weight and the clear preponderance of all the evidence. These rules are of such ancient origin and through acceptance at every term of court they have attained the status of canons of judicial review."

And in *Kenosha v. Dennis* (1969), 42 Wis. 2d 694, 697, 698, 168 N. W. 2d 216, in an action tried by the court without a jury, we said:

"The credibility of the witnesses is to be evaluated by the trial court, and 'the inferences to be drawn from the observable facts [are] for the trial court, and unless they are inherently impossible or unreasonable they should be accepted on appeal.' *Madison v. Geier, supra,* page 697."

A review of the entire record reveals the following summary of necessary facts:

Mrs. Lottie Novak is a middle-aged widow, is and has been the owner of 160 acres in the town of Agenda, Ashland county, described as the Northwest Quarter of Section 36, Township 41, North, of Range One West, Ashland county, Wisconsin. This parcel of land lies east of and adjacent to a north-south town highway in the town of Agenda. The highway had been in existence for many years and was being improved and blacktop-surfaced in the summer and fall of 1965. As part of the improvement a low portion of the road adjoining plaintiff's farm was raised about 18 to 24 inches. In addition, pursuant to a topographic watershed survey ordered by the county highway commission, a 12-inch culvert was installed six inches below the surface of the town highway at its lowest point on October 13, 1965, to allow water to flow from the west to the east side of the road.

The plaintiff's driveway runs from west to east from the town road to a point near her barn and milkhouse. South of the driveway there is lowland or wetland that had water standing on it in the spring of the year and after heavy rains. This area is adjacent to the road where the culvert was installed.

Directly across the road to the west, in the culvert area, the neighbor's land is also low and swampy. There was testimony and a diagram by a federal forestry employee to the effect that a fill had been placed on the west side of the highway in this area by the town which decreased the water retaining capacity of the lowlands there, thus forcing more surface runoff to flow through the culvert onto plaintiff's land. Plaintiff stated that the increased waterflow required the digging of a drainage ditch eastward on her property to prevent flooding of her driveway. The ditch was unable to handle the flow, and the barnyard area was still subject to flooding.

The evidence regarding this fill is in dispute. The town chairman, who with the other two board members directed the construction project, testified that no fill was placed near the west end of the culvert. Rather, he stated that the rocks shown in plaintiff's photographs are the remnants of a stone fence that was leveled during construction to remove a traffic hazard from the roadside. He further stated that the leveling process terminated 84 feet south of the west end of the culvert, leaving undisturbed the roadside conditions between that point and the culvert.

The chairman's testimony was corroborated by that of the bulldozer operator, Robert Haderly, on examination by the court which indicated that he did not come within more than 80 feet of the culvert while operating the bulldozer.

The record shows that the natural drainage pattern provides a flow route through the approximate location of the culvert except for the dike effect of the roadbed. Prior to the installation of the culvert, water flowed over

the road from west to east during periods of heavy rain or runoff from melting snows. The bottom level of the culvert was at approximately the same level or somewhat higher than the top of the old roadway since the 12-inch culvert was six inches from the new surface, or a total of 18 inches from the top of the roadway. The fill had raised the road surface 24 inches at the location of the culvert.

Plaintiff's surveyor, Elwood Olson, testified that he made two test drills in the filled area to determine its composition and depth. He found the fill ranged from one to two feet in depth and was composed of large rocks, gravel and brush. Mr. Olson further constructed a top-view profile map of the immediate area showing the roadway and filled area. His characterization of the area immediately adjacent to the west end of the culvert as "fill area, gravel, large rocks" is directly contrary to the testimony of the town chairman, the bulldozer operator and defendant's Exhibit A, all of which show the low stone fence near the culvert as undisturbed by the construction project for a distance of about 80 feet.

The plaintiff testified, somewhat equivocally, that although there was water standing on her lowland in the spring and after heavy rains before the road improvement, that after the improvement and even with a ditch constructed on her property the situation was much worse and that water made her barnyard almost unusable at times and water stood in her fields.

The plaintiff also argued that because of the fill, as her witness described it, water did not accumulate and soak into the ground in the swampy area across the road but because of the fill and the culvert the water was concentrated on her land to her damage.

The trial court found upon this disputed testimony that the fill area in the neighbor's land was far enough south of the culvert so that the quantity of water channeled onto plaintiff's land was not affected; it further found that the installation of the culvert did not change the flow

lines of the drainage in the area; and, therefore, there was no occupying of the lands of plaintiff by the town without having a right to do so.

While the trial court, as the trier of the facts, might make findings with credible evidence to support them as contended by the plaintiff, we cannot conclude the findings the court did make were against the great weight and clear preponderance of the evidence; therefore such findings will not be disturbed.[1]

*By the Court.*—Order affirmed.

---

[1] *Mitchell v. Western Casualty & Surety Co., supra.*