In re the C. SCHMIDT COMPANY,
Debtor.

TMP ACQUISITION COMPANY,
INC., Plaintiff,

v.

The C. SCHMIDT COMPANY,
et al., Defendants.

Bankruptcy No. 1–90–00599.
Adv. No. 1–90–0158.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 20, 1993.

Timothy B. Mathews, Robert G. Sanker, Cincinnati, OH, for plaintiff.

Michael E. Samuels, Cincinnati, OH, for defendant INB.

K.C. Cohen, Indianapolis, IN, for debtor/defendant.

## DECISION and ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BURTON PERLMAN, Chief Judge.

This adversary proceeding grows out of a sealed bid sale of assets of defendant C. Schmidt Company ("Schmidt"), debtor in a related Chapter 11 case. Plaintiff was the successful bidder at the sale and now asserts that it did not receive all of the assets to which it was entitled, particularly due to the conduct of defendant INB National Bank ("INB"). Now before us is motion for summary judgment by INB.

While the adversary proceeding is noncore, this court has authority to enter this order on the motion for summary judgment. *In re One–Eighty Investments, Ltd.*, 72 B.R. 35, 37 (N.D.Ill.1987).

Background facts which are not disputed are that C. Schmidt Co., debtor in the related bankruptcy case, filed a voluntary Chapter 11 case on February 6, 1990. In very short order it was concluded that the business would not continue, but that the assets would be sold. On March 13, 1990, an order was issued authorizing debtor to employ Equity Partners, Inc. ("EPI") for the purpose of conducting a sale. EPI put out a bid package dividing the assets into six parcels, of which the following three are here relevant: Parcel C, machinery and equipment only; Parcel D, inventory—includes raw, work in process (WIP) and finished goods; and Parcel E, designs, patents, trademarks, licenses, and names. The bid package stated that inspection

dates were April 5, 1990, April 6, 1990, April 10, 1990, and April 11, 1990.

On March 13, 1990, an order was entered authorizing employment of EPI for the purpose of assisting in the sale of the assets of debtor. Debtor then, on March 22, 1990, filed Application to Sell Assets Free and Clear of Liens and Encumbrances. After listing the several categories of assets, the Application said that "... bids will be accepted on all of the above assets for specific parcels thereof in accordance with the EPI bid procedure or as a result of acceptable bids being made prior to the anticipated bid opening date of April 26, 1990 ...". After notice was given to creditors, an order was entered April 26, 1990, that order stating, in pertinent part, "... that upon the acceptance of any sealed bid by INB National Bank, Debtor be, and it is hereby authorized to sell to the purchaser submitting such accepted bid the assets described in such bid free and clear any and all liens ...". Meanwhile, EPI sent out its bid package to interested parties, including plaintiff.

A bid was then submitted "on behalf of Koster Industries, Inc. and TMP Acquisition Company, Inc.", sent by Federal Express, dated April 25, 1990. The bid offered $301,500.00 for Parcels C, D, and E "on an all-inclusive basis, wall-to-wall *as inspected by the writer* [Ronald J. Koster] and his associates." (Emphasis supplied). The requisite certified check was enclosed.

On May 2, 1990, INB on behalf of the debtor accepted the bid of plaintiff. Thereafter, debtor continued business until it closed on May 7, 1990.

■ The task of the court on this motion for summary judgment is, based upon the evidentiary materials provided, to determine, first, whether there is any genuine issue of material fact, and, second, if there is none, whether movant is entitled to judgment as a matter of law. The basis for this statement is to be found at F.R.Civ.P. 56(c), incorporated into bankruptcy practice by F.R.B.P. 7056(c):

**(c) Motion and Proceedings Thereon.**
... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

Movant has provided five depositions in support of its motion.

Movant reads the complaint as a claim only for unjust enrichment. Movant says that such a claim requires that the party unjustly enriched have procured the enrichment by fraud, misrepresentation or bad faith. Movant says that the complaint contains no allegations of fraud and misrepresentation or bad faith against it, but rather those have been asserted only against debtor and its president, Paul Erickson. Movant says that, since there is no such claim, it is entitled to summary judgment.

Further, movant argues in support of its motion that the bid that plaintiff made is ambiguous and its terms are superseded by the terms of the bill of sale. Movant urges that the deposition evidence makes it clear that the bid was ambiguous, because Koster inspected the assets on April 6, 1990, while TMP inspected the assets on April 16, 1990, and the inventory on those two dates was different. Movant in its memorandum has this to say:

Under the circumstances, for the Bid to be given the construction proffered, a precise date needs to be supplied, to permit the reader of the Bid to understand that the bidder is requesting the impossible; to purchase the inventory of an ongoing business as viewed or as it existed on two separate dates, ten days apart, including inventory that had previously been incorporated into finished goods, sold and shipped to customers. Had the Bid so specified, obviously it would not have been accepted.

Movant says that the evidence shows that plaintiff knew that debtor continued in business during April and was therefore on notice that the inventory would be used to continue operating the business. Movant then argues that the bill of sale, being unambiguous, should be held to govern the

relationship between the parties. The bill of sale said that the transfer of property was made on an as-is basis, and does not include finished goods.

Plaintiff in its response disagrees that it is necessary to make a showing of fraud, misrepresentation or bad faith to prove a case of unjust enrichment, and further argues that if bad faith is necessary, the actions of movant in manipulating the auction process for its own benefit amounts to bad faith. Further, plaintiff argues that its bid was unambiguous and was an offer to purchase all of the inventory that was viewed on April 16, 1990. Finally, plaintiff urges that the bill of sale cannot control the transaction, because the sale was complete when EPI communicated acceptance to plaintiff on May 2, 1990, and the bill of sale is not an agreement.

After considering the submissions of the parties, we have reached the conclusion that the motion must fail. The testimony of witnesses upon which movant relies cannot alter the basic facts of what occurred here. The secured claim of defendant INB far exceeded any possible realization from the sale of assets of the debtor, and consequently and understandably INB controlled the sale of assets which occurred. EPI was retained by debtor at the behest of INB to liquidate the assets of debtor. EPI ran an auction sale.

■ As is invariably the case in such sales, the public was informed about the terms of the sale by means of the bid package referred to above. The bid package put together by EPI was a solicitation for offers. Plaintiff's bid was an offer which necessarily incorporated the terms and conditions of the bid package. 7 Am. Jur.2d *Auctions and Auctioneers* § 16 (1980 and Supp.1993). The terms and conditions of plaintiff's offer, including the amount of inventory that existed when plaintiff viewed it, became part of the contract upon seller's acceptance on May 2, 1990.

One of the terms in the bid package, again an invariable element in an auction sale, is notice of the time when the public may view the items to be sold. Further, the notice identified the items to be sold. One of those items was inventory. Plaintiff then did what bidders do, it viewed the inventory. It submitted a bid based upon what it had seen. Its bid said that that was what it was doing. Plaintiff's bid was accepted.

■ In any auction sale, the reasonable expectation of the parties, the bidder and the seller, is that "what you see is what you get." *See Druml Co. v. Capitol Machinery Sales and Service Co.*, 29 Wis.2d 95, 138 N.W.2d 144 (1966) (citing 77 C.J.S. *Sales* § 315, at 1160 (1952)) (doctrine of caveat emptor applies to quality and condition of property and thus negates warranties but buyer is nonetheless entitled to receive what he buys). It is simply not thinkable for a party to take the position that a bidder did not buy what it saw at the invitation of the seller, or to take the position that the bidder should have known that what it was going to get was something different from what it saw. Of course, the seller could have altered the usual custom in auction sales by expressly stating that the terms were other than those usual in an auction sale, but EPI was not instructed by its principals to do that.

It is therefore the conclusion of the court, that while there is no genuine issue of fact in the record presented to this court, movant is not entitled to judgment as a matter of law because its position that it was not obligated to convey to an auction sale what the purchaser had viewed pursuant to the terms of the solicitation for offers, is unsound. The motion is denied.

So Ordered.