# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2020 Term**

_____

**No. 18-0383**

_____

**FILED**
**June 15, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ALEX LYON & SON,**
**SALES MANAGERS & AUCTIONEERS, INC.,**
**Defendant Below, Petitioner**

**v.**

**JAMES R. LEACH,**
**Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Wood County**
**The Honorable Jason Wharton, Judge**
**Civil Action No. 17-C-110**

**AFFIRMED**

_____

**Submitted: February 19, 2020**
**Filed: June 12, 2020**

George J. Cosenza, Esq.              Matthew C. Carlisle, Esq.
Cosenza Law Office                   Theisen Brock
Parkersburg, West Virginia           Marietta, Ohio
Counsel for the Petitioner           Jeffrey B. Reed, Esq.
                                     Parkersburg, West Virginia
                                     Counsel for the Respondent

**JUSTICE HUTCHISON delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      When real or personal property is sold in an auction *with* reserve, the auctioneer (as agent of the seller) invites offers from successive bidders which the auctioneer may accept or reject until the auctioneer announces the completion of the sale. A bid is the equivalent of an offer to buy the property, and no contract is formed until the auctioneer manifests final acceptance of the bid. In an auction with reserve, the property will not be sold unless the highest bid is equal to or exceeds a minimum price.

2.      When real or personal property is sold at an auction, the sale is presumed to be *with* reserve unless the seller announces that the property is to be sold *without* reserve.

3.      When real or personal property is sold at an auction *without* reserve (also called an "absolute auction"), the auctioneer (as agent of the seller) makes an offer to sell at any price bid by the highest bidder, and the offer is accepted and a contract is formed with each higher bid placed by a buyer. Once the auctioneer calls for bids, the property cannot be withdrawn from the auction. In an auction without reserve, the property will be sold to the highest bidder and no minimum price or other condition will limit bidding.

4.      The seller of property sold at auction may prescribe, within reasonable limits, the terms and conditions of the sale.

5.      A bidder at an auction is generally bound by the published or announced terms and conditions of an auction, even if the bidder did not see or hear those terms and conditions.

6.      When a seller (or the seller's agent, the auctioneer) establishes terms and conditions for an auction of property in an advertisement or publication prior to an auction, those terms and conditions are thereafter binding upon both the seller and any bidder.  Any bid placed at the auction incorporates those terms and conditions unless there is an effective modification.

7.      As a general principle, all the bidders at an auction must stand upon an equal footing.  Accordingly, an auctioneer cannot vary the announced terms of the sale as to some bidders or any one bidder to the detriment of the other bidders.

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Wood County we examine a narrow and complex question: how is a contract formed in an auction? This question is one of first impression in West Virginia.

As we discuss below, the circuit court properly construed the law of auctions and contracts. Because there are no genuine issues of material fact in the record below, and inquiry concerning the facts will do nothing to clarify the application of the law, we find that the circuit court correctly granted summary judgment to the plaintiff and denied summary judgment for the defendant.

## I. Factual and Procedural Background

This appeal involves the auction of a plot of land in Vienna, West Virginia. The defendant, Alex Lyon & Son, Sales Managers & Auctioneers, Inc., advertised and conducted the auction of the property. The plaintiff, James R. Leach, was the high bidder at the auction.

The parties agree that the defendant placed several advertisements for the sale of the property, in writing and online, and described the auction as an "absolute sale" with a minimum opening bid of $200,000. The defendant's advertisements contained "terms and conditions" that required prospective buyers to make a 10% deposit before

1

being allowed to place a bid on the tract.[1] The defendant also created an "Auction Catalog" with terms and conditions that contained a similar requirement: that prospective bidders must first provide "Cash or [a] Company Check" of the 10% deposit before bidding. Furthermore, the terms and conditions in the pre-auction advertisements and catalog required prospective bidders to provide a "Bank Letter of Guarantee" made payable to the defendant to ensure payment of the balance of the proceeds if the bidder was successful at the auction. Additionally, the pre-auction advertisements and catalog required that, before bidding, bidders must sign a "Bidders Registration Agreement" that bound them to the terms and conditions of the auction. Lastly, the advertising and catalog provided that the terms and conditions of the auction could be modified only by a statement made at the auction.[2]

The defendant scheduled the auction of the property to begin at 1:00 p.m. on May 21, 2016. The plaintiff arrived at the auction site early and waited. At about 12:50 p.m., the plaintiff approached the bidder's registration table and spoke to an employee of the defendant. When questioned, the employee confirmed to the plaintiff that no bidders

---

[1] The advertising noted that the defendant was auctioning "3.273 acres vacant land" with 315 feet of river frontage located at #1 17th Street, Vienna, West Virginia. The advertisements specifically stated, at the top and in bold lettering: "**Absolute Sale, Minimum Opening bid $200K** (10% Deposit Required to Bid)."

[2] For example, an online advertisement for the property advises bidders to examine the printed terms and conditions but provides that "STATEMENTS MADE DAY OF SALE SUPERSEDE PRINTED MATERIAL." The record is clear, however, that the defendant made no statements at the auction.

had made a deposit or otherwise qualified to bid on the property. In reliance upon that fact, the plaintiff delivered to the defendant's employee a signed bidder's registration agreement, a copy of a bank's letter of credit, and a $20,000 check. The parties agree that the plaintiff was properly qualified to bid on the property.

Thereafter, the defendant's auctioneer (a man named Jack Lyon) began the auction. The defendant's auctioneer did not announce any new or modified terms for the auction; he simply sought bids on the property. However, another individual named Kurt Lerch joined the bidding with the plaintiff. Bidding began at $200,000, and after a brief round of increasing bids between the plaintiff and Mr. Lerch, the plaintiff won the auction with a high bid of $265,000.

The plaintiff subsequently filed this lawsuit against the defendant. The plaintiff alleged that, immediately after the auction ended, he learned that Mr. Lerch had not met the bidding requirements because he had not deposited 10% before bidding. The plaintiff's lawsuit sought damages based upon various legal theories, including breach of contract, because the defendant had permitted an unqualified bidder (Mr. Lerch) to bid on the property. The defendant responded to the lawsuit, and the parties conducted discovery.

The plaintiff and the defendant subsequently filed motions for summary judgment. The plaintiff pointed out that the defendant admitted that Mr. Lerch had not placed a 10% deposit before the auction, had not signed a bidder's registration agreement, and had not offered any bank letter guaranteeing he could purchase the property. Instead,

3

the defendant claimed that Mr. Lerch was a qualified bidder because the defendant's auctioneer, Mr. Lyon, had personally qualified Mr. Lerch to bid before the auction "by virtue of his prior relationship with the [d]efendant and Mr. Lyon."[3]

Moreover, the plaintiff took the deposition of Mr. Lyon, the defendant's auctioneer. Mr. Lyon testified that if the plaintiff were the only qualified bidder on the property, then the winning price would have been only $200,000. Mr. Lyon testified as follows:

> Q. If Kurt Lerch were not qualified to bid on the property, meaning [the plaintiff] Mr. Leach was the only bidder, what would the selling price have been?
>
> A. The price would have been $200,000.

On April 5, 2018, the circuit court entered an order granting summary judgment to the plaintiff and denying the defendant's motion for summary judgment. Because of the confusing language in the defendant's advertisements and catalog, the circuit court found that the sale met the definition of an "auction with reserve" because of the requirement for a minimum bid of $200,000. However, once that minimum bid was placed, the circuit court found that the defendant had advertised the sale as an "absolute

---

[3] The defendant also asserted that it had an "in-house" policy of allowing individuals to become "permanent qualified bidders" with a "permanent bid number," and these individuals would not have to meet advertised qualifications before bidding at auctions. However, the defendant failed to produce any documentation showing Mr. Lerch was such a perpetually qualified bidder. Furthermore, the record is undisputed that the defendant neither advertised before, nor announced at, the auction its policy of waiving posted terms and conditions for these so-called "permanent qualified bidders."

auction." The circuit court then determined that when a party offers property for sale in an "absolute auction," a contract is formed between the bidder and the auctioneer with every bid, until a higher bid is offered. In other words, the auctioneer's advertising material was an offer from the auctioneer to sell the property at the price bid by the highest bidder, and the bidder accepted the offer and formed a binding contract with every bid.

Additionally, the circuit court determined that the terms of the auctioneer's offer are contained in the auction's advertising materials, and that these terms are binding on the auctioneer unless there is an effective modification by the auctioneer. Once the auctioneer sets forth the terms of the auction in advertising, bidders may rely on those advertised terms in forming bids, and both the bidder and the auctioneer (and the seller for whom the auctioneer works) are bound by those advertised terms.

Applying these rules to this case, the circuit court found that the defendant's advertisements and catalog were "clear, unambiguous and undisputed," and required bidders to make a 10% deposit of the minimum bid as well as provide a letter of credit guaranteeing that the bidder could complete the purchase. The circuit court found it was undisputed that the plaintiff met these pre-auction qualifications and that the other bidder, Mr. Lerch, did not. Accordingly, the circuit court found that a contract was formed between the plaintiff and defendant when the plaintiff properly bid $200,000 or more on the property, and the contract incorporated requirements that every bidder qualify by posting a deposit, presenting a bank letter of guarantee, and signing the bidder's registration agreement. The circuit court then found that the defendant breached the contract when it

5

permitted someone who was not a qualified bidder to also bid on the property. As the sole qualified bidder, the circuit court concluded that the plaintiff should have been permitted to buy the property at the minimum required bid, that is, for $200,000.

Because the plaintiff (as the winning bidder against Mr. Lerch) paid $265,000 after the conclusion of the auction, the circuit court ordered the defendant to repay the plaintiff $65,000 for the excess purchase price and $3,867.50 in excess auction commission fees, plus pre- and post-judgment interest.

The defendant now appeals the circuit court's April 5, 2018, summary judgment order.

## II. Standard of Review

We review a circuit court's entry of summary judgment de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "The question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined." Syllabus Point 5, *Aetna Casualty & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *id.* "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to

6

find for the nonmoving party[.]" Syllabus Point 4, in part, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756. Moreover, we have explained that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syllabus Point 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995). Finally, we are cognizant that a plaintiff bears the burden of proof at a trial on the merits, and therefore "a plaintiff only is entitled to summary judgment where his evidence is so strong that he would be entitled to a directed verdict at trial." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 62 n.17, 459 S.E.2d 329, 339 n.17 (1995).

We now examine the record and the parties' arguments to assess whether the defendant presented any genuine issue of material fact, or whether inquiry concerning the facts is desirable to clarify the application of the law.

## III. Discussion

A contract is a "promise or set of promises" that is enforceable or otherwise recognizable at law. *Contract*, BLACK'S LAW DICTIONARY (11th ed. 2019). Among the various requirements to form a contract, the two key requirements we examine in this case are "an offer and an acceptance[.]" *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 287, 737 S.E.2d 550, 556 (2012). In other words, there must be one party who makes an

offer and another who accepts the offer, thereby reaching a "mutual assent" and a meeting of the minds.

> In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied.

*Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140-41, 437 S.E.2d 448, 450-51 (1993).

In this case, we are asked to consider the unique context of auctions, to examine the contract requirements of "offer" and "acceptance," and to weigh how a seller and buyer in an auction reach a mutual assent. In the context of auctions, our research and that of the parties reveals no controlling law on these contract requirements in West Virginia, and a surprising paucity of case law in other jurisdictions. Instead, much of the law in this area derives from legal encyclopedias and treatises such as WILLISTON ON CONTRACTS, the RESTATEMENT (SECOND) OF CONTRACTS, and AMERICAN JURISPRUDENCE 2D. As one court said,

> The law related to sale of property at an auction is a legal anomaly. Various treatises describe the controlling legal principles at length and are, for the most part, in harmony. Little of this law, however, has made its way into the case law. Many state and federal courts, therefore, have relied on the treatises' persuasive authority for auction questions.

*Pyles v. Goller*, 674 A.2d 35, 39 (Md.App. 1996).

8

Here, the defendant directly challenges the circuit court's legal finding concerning when an offer was made to buy the Vienna property, and when or if that offer was accepted at the auction. The defendant asserts that the circuit court erred in holding that the defendant's pre-auction advertising was an offer to prospective bidders to form a contract, and that an appropriate bid at the auction by the plaintiff was an acceptance of the offer. The defendant argues that its advertising did not create an offer to prospective bidders and was nothing more than a generic advertisement inviting bids at an auction. To consider the defendant's arguments, we must first identify the rules governing contract formation in the context of an auction.

West Virginia Code § 19-2C-1(h) (2019) defines an "auction" as "any public sale of real or personal property in any manner . . . when offers or bids are made by prospective purchasers and the property sold to the highest bidder." "The main purpose of auction sales is to obtain the best financial return for the seller by the free and fair competition among bidders." 7A C.J.S. *Auctions and Auctioneers* § 1. *See also*, *Peck v. List*, 23 W.Va. 338, 377 (1883) ("What is the nature of such a sale by auction? It is that the goods shall go to the highest real bidder.").

There are generally two different types of auctions: those "with reserve," and those "without reserve" (also known as an "absolute auction"). The distinction between auctions with or without reserve is important because "[i]n an auction setting, the point at which mutual assent is achieved [and a contract formed] depends on the type of auction being held." *Pyles*, 674 A.2d at 39-40. *See also Marten v. Staab*, 543 N.W.2d 436, 443

(Neb. 1996) ("In order to determine whether a contract was formed at the auction, it is necessary to identify the type of auction that occurred.").

The distinguishing feature between an auction with reserve or without reserve is, simply, whether the property being sold can be withdrawn before the close of the auction. In an auction *with* reserve, the auctioneer or seller "may withdraw the goods at any time until he announces completion of the sale;" in an absolute auction or an auction *without* reserve, "after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time." *Pitchfork Ranch Co. v. Bar TL*, 615 P.2d 541, 551 n.12 (Wyo. 1980) (quoting 7 AMJUR.2D *Auctions and Auctioneers* § 17).

An auction *with reserve* is one "in which the property will not be sold unless the highest bid exceeds a minimum price." *Auction*, BLACK'S LAW DICTIONARY. "The presumption in contract law is that auctions are held 'with reserve' unless otherwise specified." *Pyles*, 674 A.2d at 40. *See also* W.Va. Code § 46-2-328(3) (1963) (Under the Uniform Commercial Code, in a sale of goods by auction, "[s]uch a sale is with reserve unless the goods are in explicit terms put up without reserve."). As noted before, in an auction with reserve, the auctioneer or seller may withdraw the property at any time until the auctioneer announces the completion of the sale.

> In an auction with reserve, the auctioneer, as agent of the seller, invites bids (offers) with the understanding that no bargain [or contract] exists until the seller has made a further manifestation of assent; the auctioneer may reject all bids and withdraw the goods from sale until he announces completion of the sale.

10

*Rosin v. First Bank of Oak Park*, 466 N.E.2d 1245, 1249 (1984). *See also* W.Va. Code § 46-2-328(3) ("In an auction with reserve the auctioneer may withdraw the goods at any time until he announces the completion of the sale.").

Because the seller in a with-reserve auction reserves the right not to sell the property and may withdraw the property before acceptance of the highest bid, "an auctioneer's bringing a piece of property up for bid is *an invitation to make a contract*, and is not an offer to contract." *Pyles*, 674 A.2d at 40. *See also Marten v. Staab*, 537 N.W.2d 518, 522-23 (Neb. App. 1995) ("In an auction with reserve, the bidder is deemed to be the party making the offer while the auctioneer, as agent for the seller, is the offeree."). It is therefore "the general rule that in auction sales, a bid is regarded as an offer to contract which is accepted 'by the fall of the hammer.'" *Clemens v. United States*, 295 F.Supp. 1339, 1340 (D.Or. 1968). "[A]sking for bids is asking for offers, which the seller or the seller's agent [the auctioneer] remains free to reject prior to acceptance." 7 AM.JUR.2D *Auctions and Auctioneers* § 13. "[A] potential purchaser's bid is the equivalent of an offer to buy merchandise, and an offer is accepted by the auctioneer upon the fall of the hammer." *Id.* *See also Pitchfork Ranch*, 615 P.2d at 547 ("[T]he sale contract is consummated by the offer of the bidder to buy and the acceptance of the bid by the seller."). "The ramification of a with reserve auction is that the principal may choose to withdraw the property at any time, before the hammer falls, and if the bidding is too low—the auctioneer need do nothing and there is no contract between the seller and the bidder." *Marten*, 537 N.W.2d at 523.

An auction *without reserve* is one "in which the property will be sold to the highest bidder [and] no minimum price will limit bidding." *Auction*, BLACK'S LAW DICTIONARY. Furthermore, in an auction without reserve, "the owner may not withdraw property after the first bid is received, the owner may not reject any bids, and the owner may not nullify the bidding by outbidding all other bidders." *Id.*

In an auction without reserve, the contract-forming roles of the parties are inverted from those in an auction with reserve: the seller (and the seller's agent, the auctioneer) "becomes an offeror, and each successively higher bid creates a contingent acceptance, with the highest bid creating an enforceable contract." *Id.* As one court stated,

> The words "without reserve" as used in auctions are words of art, assuring prospective bidders that the property will actually go to the bidder offering the highest price. The seller may not nullify this purpose by bidding himself or through an agent, nor by withdrawing the property from sale if he is not pleased with the bids. Thus, the seller may not refuse to accept a bid where the auction is without reserve; the bid itself establishes a right in the bidder to have the property unless someone else by raising his bid succeeds to his right.

*Zuhak v. Rose*, 58 N.W.2d 693, 696 (Wis. 1953). Stated differently,

> When an auction is "without reserve" or "absolute," a seller makes an offer to sell when the seller advertises the sale and it is up to the bidder to accept. The seller is the offeror and the bidder is the offeree. A contract is formed with each bid, and the seller may not withdraw the property once any legitimate bid has been submitted, but is absolutely committed to the sale once the bid has been entered.

*Washburn v. Thomas*, 37 P.3d 465, 467 (Colo. App. 2001). *See also*, *Pitchfork Ranch*, 615 P.2d at 548-49 ("[I]n the no-reserves auction, the contract is consummated with each bid,

12

subject only to a higher bid being received.  This is so because the seller makes his offer to sell when he advertises the sale will be a no-reserves sale to the highest bidder.  Once the first bid has been received, the only acceptance which forms a binding agreement is the one offered by the highest bidder. . .  In the no-reserves situation, the seller is absolutely committed to the sale once a bid has been entered, no matter what the level of bidding or the seller's notion of the property's true value."); 7 AM. JUR. 2D *Auctions and Auctioneers* § 36 ("The words 'without reserve' as used in auctions are words of art, as showing prospective bidders that the property will actually go to the bidder offering the highest price, and the seller may not nullify this purpose by bidding himself or through an agent, or by withdrawing the property from sale if he is not pleased with the bids.").[4]

---

[4] The drafters of the RESTATEMENT (SECOND) OF CONTRACTS succinctly summarized the above-stated contract-formation rules for auctions:

At an auction, unless a contrary intention is manifested,

> (a) the auctioneer invites offers from successive bidders which he may accept or reject;

> (b) when goods are put up without reserve, the auctioneer makes an offer to sell at any price bid by the highest bidder, and after the auctioneer calls for bids the goods cannot be withdrawn unless no bid is made within a reasonable time;

RESTATEMENT (SECOND) OF CONTRACTS § 28(1) (1981).  The comments note that these rules "reflect the usual understanding at an auction sale," including the presumption that auctions are conducted with a reserve unless a contrary intention is announced or otherwise manifested.  *Id.*, cmt. a.

In the case at bar, the defendant advertised the May 2016 auction as an "absolute sale." The term "absolute auction" is synonymous with an "auction without reserve." *See*, *e.g.*, *Marten*, 543 N.W.2d at 443. In 2019, the Legislature amended its statutes regulating auctioneers and adopted the following definition for an absolute auction:

> "Absolute auction" means the sale of real or personal property at auction whereby every item offered from the block is sold to the highest bidder without reserve and without the requirements of a minimum bid or other conditions which limit the sale other than to the highest bidder.

W.Va. Code § 19-2C-1(a) (2019).[5]

To summarize, we find the following guidelines generally govern auction sales, unless a different intention is manifested. We hold that when real or personal property is sold in an auction *with* reserve, the auctioneer (as agent of the seller) invites offers from successive bidders which the auctioneer may accept or reject until the auctioneer announces the completion of the sale. A bid is the equivalent of an offer to buy the property, and no contract is formed until the auctioneer manifests final acceptance of

---

[5] While the Legislature's definition in West Virginia Code § 19-2C-1(a) provides us with guidance, we note that the statutory definition was not in effect when the defendant conducted its May 2016 auction. Moreover, neither party has argued for the retroactive application of the statute.

Furthermore, in addition to defining an "absolute auction," in 2019 the Legislature also adopted a provision stating, "It is unlawful to conduct or advertise that an auction is absolute if minimum opening bids are required or other conditions are placed on the sale that limit the sale other than to the highest bidder." W. Va. Code § 19-2C-10 (2019). In the instant case, the defendant advertised the May 2016 auction as "absolute" but simultaneously required a minimum opening bid of $200,000. The defendant's advertisement would now appear to be prohibited by law.

14

the bid. In an auction with reserve, the property will not be sold unless the highest bid is equal to or exceeds a minimum price. In addition, we hold that when real or personal property is sold at an auction, the sale is presumed to be *with* reserve unless the seller announces that the property is to be sold *without* reserve.

We further hold that when real or personal property is sold at an auction *without* reserve (also called an "absolute auction"), the auctioneer (as agent of the seller) makes an offer to sell at any price bid by the highest bidder, and the offer is accepted and a contract is formed with each higher bid placed by a buyer. Once the auctioneer calls for bids, the property cannot be withdrawn from the auction. In an auction without reserve, the property will be sold to the highest bidder and no minimum price or other condition will limit bidding.

In the instant case, the defendant's pre-auction advertising and catalog obscured whether its auction was to be conducted "with reserve" or "without reserve." On the one hand, the pre-auction documents required a minimum opening bid of $200,000, language which indicates an intent to conduct an auction *with* reserve. On the other hand, the pre-auction documents announced, in large, bold lettering, that the defendant was conducting an "Absolute Sale," language which indicates that the defendant intended to

hold an auction *without* reserve, and to sell the property to the highest bidder without the requirement of a minimum bid.[6]

The circuit court examined the ambiguous language of the defendant's pre-auction advertising and catalog, and concluded that, "even if an auction begins as one that is 'with reserve,' that is, has a minimum bid, once the minimum bid is reached, if it is then advertised as an 'absolute' auction, it then becomes an absolute auction." The circuit court reasoned that "when an auction is advertised as an absolute auction once a condition precedent of a minimum bid has been satisfied, it becomes an absolute auction once the minimum bid is reached." In conclusion, the circuit court found that the defendant had conducted an absolute auction such that, once anyone met the condition precedent and offered the minimum bid of $200,000, the auctioneer was required to sell the property to the highest bidder. The defendant challenges this finding by the circuit court and insists that the auction was conducted solely as an auction "with reserve" and that the "absolute sale" language in its advertisements and catalog has no meaning.

After reviewing the defendant's advertisements and catalog, we find no error in the circuit court's conclusion. In *Dry Creek Cattle Company v. Harriet Brothers Partnership*, 908 P.2d 399 (Wyo. 1995), the Supreme Court of Wyoming addressed a

---

[6] As we noted *supra* in footnote 5, as of June 7, 2019, West Virginia's auction law now provides that "[i]t is unlawful to conduct or advertise that an auction is absolute if minimum opening bids are required or other conditions are placed on the sale that limit the sale other than to the highest bidder." W.Va. Code § 19-2C-10.

situation like that in the instant case. An auction house had advertised the sale of a ranch as a "Minimum Bid – Absolute Auction." The *Dry Creek* court examined all of the language in the advertisement, and found each word had to be given meaning and could not be taken out of context. *See*, *e.g.*, Syllabus Point 6, *Columbia Gas Transmission Corp. v. E. I. du Pont de Nemours & Co.*, 159 W. Va. 1, 217 S.E.2d 919 (1975) ("Each word in a contract is presumed to have a unique meaning and, thus, no word or clause is to be treated as a redundancy, if any meaning reasonable and consistent with other parts can be given to it."). Like the circuit court in this case, the *Dry Creek* court concluded the ambiguous advertisement was "grammatically apt to convey the proposition that a minimum bid must be received for all of the parcels before the auction would move to an absolute sale. The legal effect is that this auction was one with reserves until that condition was satisfied[.]" *Dry Creek*, 908 P.2d at 403.

The language used by the defendant in its advertising and catalog clearly indicates a requirement of a minimum bid of $200,000, and just as clearly indicates an intent that the defendant was conducting an absolute auction. Reading the advertisement as a whole, we conclude that the defendant announced an intention to hold an absolute auction with one condition precedent: that no bid would be accepted below $200,000. However, once that condition was satisfied, the legal effect was that the auction was conducted without a reserve and was absolute. In other words, in the advertisements and catalog, the defendant auctioneer (as agent for the seller) made an offer to sell the property

for any bid of $200,000 or more to the highest bidder, and a contract was formed with each bid placed by a buyer.

The defendant asserts, however, that the circuit court erred in finding that the advertisements and catalog had any contractual effect on the sale of the property. Furthermore, the defendant argues that because an auction is an open sale, the general rule is that anyone (like Mr. Lerch) is qualified to be a bidder. As we understand the defendant's position, once an offer is made and accepted at an auction and a contract is formed, the question raised is this: does that contract incorporate the terms and conditions of the auction advertisements? In the context of this case, does the contract incorporate the auctioneer's advertised requirement that potential bidders meet certain conditions before being qualified to bid? And do those terms and conditions bind a seller and auctioneer?

The law is clear that "[i]t is the right of the owner of property sold at auction to prescribe, within reasonable limits, the manner, conditions, and terms of sale." *Coleman v. Duncan*, 540 S.W.2d 935, 938 (Mo. App. 1976). *See also*, *Love v. Basque Cartel*, 873 F. Supp. 563, 570 (D. Wyo. 1995) ("The owner of the property offered for sale has the right to prescribe the manner, conditions and terms of the sale."). These terms and conditions are announced to potential bidders in two ways: through advertisements, publications, and catalogs distributed before an auction, or oral announcements by the auctioneer at the start of the auction. *See* RESTATEMENT (SECOND) OF CONTRACTS § 28, cmt. e ("The terms on which goods are to be sold at auction are often made known in advertisements or catalogues or posted at the place where the auction is to be held."). *See*,

18

*e.g.*, *In re C. Schmidt Co.*, 158 B.R. 717, 719 (Bankr. S.D. Ohio 1993) ("As is invariably the case in such sales, the public was informed about the terms of the sale by means of the bid package referred to above."); *Cont'l Can Co. v. Commercial Waterway Dist. No. 1 of King Cty.*, 347 P.2d 887, 888-89 (Wash. 1959) ("The conditions of sale may be incorporated in an advertisement of the auction[.]"); *Zuhak v. Rose*, 58 N.W.2d 693, 696 (Wis. 1953) (Seller "was responsible for informing plaintiff[-bidder] by the Tribune advertisement, by circulars distributed at the auction and by the auctioneer's oral announcement, that there was to be a complete liquidation of all the advertised property without reserve, and that the realty would be sold as a whole or piecemeal, whichever brought the most money.").

The law is also clear that a bidder is generally bound by the published or announced terms and conditions of an auction, even if the bidder did not see or hear those terms and conditions.[7] However, "[i]mplicit in this statement is its reciprocal—that if the

---

[7] *See*, *e.g.*, *Hessel v. Christie's Inc.*, 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005) ("Courts in this District have held that by placing a bid in an auction, the bidder 'consent[s] to be bound by the terms in the catalog governing the auction.'"); *In re Wilson Freight Co.*, 30 B.R. 971, 975 (Bankr. S.D.N.Y. 1983) ("Moreover, the terms and conditions of the sale announced by Mr. Parks, the auctioneer, and Mr. Solarsh were binding on Wes-Flo regardless of whether its bidder, Art Perry, knew or heard them."); *Pitchfork Ranch*, 615 P.2d at 553 ("The buyer may rely upon such announced terms and conditions of the sale, and he is likewise bound thereby, whether present at the time of the announcement or has knowledge thereof."); *Matter of Premier Container Corp.*, 408 N.Y.S.2d 725, 730 (Sup. Ct. 1978) ("The conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding on the purchaser, whether or not he knew or heard them."); *Coleman v. Duncan*, 540 S.W.2d 935, 938 (Mo. App. 1976) ("Usually the auctioneer . . . announces these terms and conditions which, when so announced, are generally deemed . . . to bind the purchaser even though he did not hear or
Continued . . .

19

buyer is entitled to rely on the terms of the auction, then the seller is also bound by the terms which he has set." *Love v. Basque Cartel*, 873 F. Supp. at 570. The general rule is that when a seller (or the seller's agent, the auctioneer) establishes terms and conditions for an auction in an advertisement or publication prior to an auction, those terms and conditions are thereafter binding upon both the seller and any bidder; any bid placed at the auction incorporates those terms and conditions unless there has been an effective modification by the auctioneer. As the drafters of the RESTATEMENT (SECOND) OF CONTRACTS stated:

> Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up.

RESTATEMENT (SECOND) OF CONTRACTS § 28(2). Accord 7 AM. JUR. 2D *Auctions and Auctioneers* § 14. *See also*, *Ley Indus., Inc. v. Charleston Auctioneers*, 603 N.E.2d 1037, 1040 (Ohio App. 1991) ("The terms of the contract are understood to be those presented in the solicitations for bids published in the relevant advertisement or legal notice prior to the auction, or as modified by the auctioneer before bids are submitted. . . . Accordingly, the legal notice or advertisement, containing the description of the property and the other relevant terms of sale, along with the buyer's bid presented in written form, would

---

understand the announcement, or was not present at the time of the announcement and such terms (or conditions) were not brought to his actual attention."); *Moore v. Berry*, 288 S.W.2d 465, 468 (Tenn.App. 1955) ("It seems to be a settled rule in this state as well as elsewhere that conditions prescribed by the seller or owner and announced at the time and place of the auction are binding on the purchaser whether or not he knew or heard them.").

constitute the parties' contract."); *Holston v. Pennington*, 304 S.E.2d 287, 290 (Va. 1983) ("It is generally held that an advertisement of a forthcoming auction obligates the owner to conduct a bona fide sale in accordance with the advertised terms[.]"); *Schwartz v. Capital Sav. & Loan Co.*, 381 N.E.2d 957, 959 (Ohio Ct. App. 1978) ("A person responding to an advertisement that an auction sale will be held has a right to rely upon the representations made therein and that the advertisement is made in good faith[.]"); *Johnson v. Haynes*, 532 S.W.2d 561, 565 (Tenn. Ct. App. 1975) ("[W]here the right to reject bids is not stated in the printed posters, nor is it announced at the sale, that right cannot be asserted [by the seller] after the bid is accepted by the fall of the hammer or other act of acceptance by the auctioneer."); *Kivett v. Owyhee Cty.*, 74 P.2d 87, 91 (Idaho 1937) ("Printed conditions under which a sale proceeds are binding on both buyer and seller[.]"); *Whitfield v. May*, 89 S.W.2d 764, 768 (Tenn. Ct. App. 1935) ("Printed conditions under which a sale proceeds are binding on both the buyer and seller[.]"); *Erie Coal & Coke Corp. v. United States*, 266 U.S. 518, 520 (1925) ("The terms and conditions of the sale as set forth in the advertisement were binding alike upon [the seller] the United States and the bidders."); 7A C.J.S. *Auctions and Auctioneers* § 21 ("The purchaser is entitled to rely on the terms prescribed and on the announcement made by the auctioneer at the time and place of the sale as to the identity of the property, the terms and the conditions of sale."); 1 WILLISTON ON CONTRACTS § 4:12

("Thus, ordinarily, terms and conditions published in the advertisements of the auction or announced at the commencement of the sale typically are binding on the parties.").[8]

An auctioneer or seller may include in the published terms and conditions of an auction a requirement that, before a potential buyer may place a bid, the buyer must make a deposit. "An auctioneer conducting an auction sale may, in a proper case, require a bidder to deposit or furnish a reasonable security as a condition of the acceptance and reporting of his or her bid." 7A C.J.S. Auctions and Auctioneers § 23 (2020). However, it is an axiom that public policy requires bidding at auctions to be open, free, and competitive, so that both bidders and the property owner receive the highest but fairest

---

[8] We note that in some jurisdictions, the auctioneer may verbally announce alterations to the terms and conditions published prior to the auction in advertisements or a catalog. In other jurisdictions, the printed conditions cannot be altered by oral statements of the auctioneer at the time of sale; instead, the previously published conditions may only be explained. *See generally*, 7 Am. Jur. 2d *Auctions and Auctioneers* § 18 (In some jurisdictions, "[t]he terms made known by the announcement, posting, or other publication may be modified by any announcement made by the auctioneer when the goods are put up. Others take the view that the printed terms may not be varied or contradicted by parol evidence of the verbal statements made by the auctioneer at the time of the sale, although it is otherwise where the oral declarations are not repugnant to, or inconsistent with, the advertisements or notices, but are merely explanatory."); 7A C.J.S. *Auctions and Auctioneers* § 24 ("Jurisdictions vary as to whether printed conditions are binding on the parties and the auctioneer's right to verbally vary or explain such conditions at the sale.").

While this question has not been resolved by this Court, we need not address it in this case because the record is clear that the defendant's auctioneer made no oral statements attempting to change the pre-auction printed terms and conditions. The record shows that the pre-auction advertisements and catalog required any prospective bidder to place a deposit, produce a "Bank Letter of Guarantee," and sign a "Bidders Registration Agreement." The defendant's auctioneer made no announcement at the auction altering these terms and conditions.

price through competitive bidding. *See, e.g.*, Syllabus Point 2, *Henderson v. Henrie*, 61 W.Va. 183, 56 S.E. 369 (1907) ("But all contracts for the purpose of suppressing and chilling competitive bidding upon property offered for sale at public auction, in order to obtain it at under value, or to obtain undue and unconscientious advantages, are fraudulent and void, and will not be enforced[.]"); Syllabus Point 1, *Peck v. List*, 23 W.Va. at 338 ("If the owners of goods or of an estate put up for sale at auction by his direction employ one or more puffers to bid for him, it is a fraud on the real bidders, and the highest bidder cannot be compelled to complete the contract."); Syllabus Point 2, *Hilleary & Johnson v. Thompson*, 11 W.Va. 113 (1877) ("An auctioneer or crier making a sale cannot properly act for himself, or any other person in bidding for the property.").

Hence, "[b]ecause of the general principle that all the bidders must stand upon an equal footing," an auctioneer cannot vary the announced terms of the sale as to any one bidder to the detriment of the other bidders. 7 Am. Jur. 2d *Auctions and Auctioneers* § 17. "It is of the essence of an auction that there shall be full and free opportunity for competition among bidders. So true is this that any agreement unfairly restrictive of that opportunity is against public policy and void." *Manhattan Taxi Serv. Corp. v. Checker Cab Mfg. Corp.*, 171 N.E. 705, 707 (N.Y. 1930). "[B]y placing a bid in an auction, the bidder 'consent[s] to be bound by the terms in the catalog governing the auction,'" *Hessel*, 399 F.Supp.2d at 514, and "any bid not in conformity with the terms and conditions of sale as advertised and announced by the auctioneer is not entitled to consideration." 7 AM. JUR. 2D *Auctions and Auctioneers* § 32.

23

In summary, we find that the law guiding our decision is well established. We hold that the seller of property sold at auction may prescribe, within reasonable limits, the terms and conditions of the sale. A bidder at an auction is generally bound by the published or announced terms and conditions of an auction, even if the bidder did not see or hear those terms and conditions. When a seller (or the seller's agent, the auctioneer) establishes terms and conditions for an auction of property in an advertisement or publication prior to an auction, those terms and conditions are thereafter binding upon both the seller and any bidder. Any bid placed at the auction incorporates those terms and conditions unless there is an effective modification. Finally, as a general principle, all the bidders at an auction must stand upon an equal footing. Accordingly, an auctioneer cannot vary the announced terms of the sale as to some bidders, or any one bidder, to the detriment of the other bidders.

In the instant case, the record shows that the defendant (on behalf of the owner of the property sold at auction) placed advertisements and published a catalog that prescribed terms and conditions of the auction sale. Those advertisements and catalog required any prospective bidder to present a $20,000 deposit; to provide a bank letter guaranteeing the prospective bidder could complete the purchase; and to sign a "Bidders Registration Agreement." The plaintiff knew of these terms, was legally bound to comply with the terms, and did comply with the terms. The record is also clear that Mr. Lerch did not post a deposit, did not provide a letter of guarantee, and did not sign a bidder's registration agreement, and so did not comply with the advertised terms and conditions of

the auction. When the defendant posted those terms in its advertisements and catalog, those terms became binding upon the defendant. Any bid at the auction was required to incorporate those terms, and the defendant could not fairly, and without announcement, require those terms for the plaintiff while waiving those same terms for Mr. Lerch. Fundamental principles of fairness required the defendant to treat the plaintiff and Mr. Lerch equally, and to have disclaimed any bid by Mr. Lerch when it became clear to the auctioneer that he had not met the pre-auction requirements to qualify to bid. Accordingly, the circuit court correctly found it was improper for the defendant to vary the announced terms of the sale for Mr. Lerch to the detriment of the plaintiff.

As the defendant's auctioneer admitted in a deposition, had Mr. Lerch not been permitted to bid, the property would have been sold to the plaintiff for $200,000. The circuit court, therefore, correctly ordered that the defendant permit the plaintiff to purchase the property for that price.

The record presented shows that no genuine issue of material fact existed to be tried regarding the formation of a contract between the plaintiff and the defendant, and the defendant's failure to comply with the terms and conditions of that contract. No inquiry concerning the facts would clarify the application of the law. Hence, we find no error in the circuit court's decision in favor of the plaintiff.

## IV. Conclusion

The circuit court's April 5, 2018, order correctly granted summary judgment to the plaintiff and denied summary judgment for the defendant.

Affirmed.